Your Name:      RAJESH K SINHA

Address:        38725 LEXINGTON STREET #119,

                FREMONT, CA 94536

Phone Number:   1-7072286943

Fax Number:     1-309-408-3393

E-mail Address: RAJESHSINHA2005@HOTMAIL.COM

Pro Se Plaintiff   **YES**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**CV24    0046**

SK

| | |
|---|---|
| RAJESH K SINHA | Case Number   *[leave blank]* |
| 38725 LEXINGTON ST #119, FREMONT, CA 94536 | **COMPLAINT** |
| Plaintiff, | |
| vs. | |
| STATE OF CALIFORNIA | DEMAND FOR JURY TRIAL |
| Office Of Attorney General | Yes ☐   No ☐ |
| 1300 "I" Street | |
| Sacramento, CA 95814-2919 | |
| Defendant. | |

**PARTIES**

1. Plaintiff. [*Write your name, address, and phone number. Add a page for additional plaintiffs.*]

Name:       ___RAJESH K SINHA _____

Address:    38725 LEXINGTON ST #119, FREMONT, CA 94536_____

Telephone:  _1-707-2286943; FAX 1-309-408-3393_____

- 2 -

2.  Defendants.  [*Write each defendant's full name, address, and phone number.*]

Defendant 1:

Name:          STATE OF CALIFORNIA_____

      Address:          ___Office of Attorney General ____

      1300 "I" Street, Sacramento, CA 95814-2919

      Phone: (916) 445-9555

Defendant 2:

Name:          _____

Address:       _____

Telephone:     _____

Defendant 3:

Name:          _____

Address:       _____

Telephone:     _____

## JURISDICTION

[*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

3.  My case belongs in federal court

   ☒ under <u>federal question jurisdiction</u> because it is involves a federal law or right.

[*Which federal law or right is involved?*] _____

   1)  **The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193)**

   2)  **Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228**

   3)  **42 USC 667(a)**

   4)  **45 CFR 302.56**

   5)  **45 CFR 301.13**

- 3 -

6) **42 USC 669(b)**

7) **The Final Rule**

8) **President Executive Order-13563**

**93492 Federal Register / Vol. 81, No. 244 / Tuesday, December 20, 2016 / Rules and Regulations**

_____.

☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the defendants <u>and</u> the amount of damages is more than $75,000.

**VENUE**

[*The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma.  If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit.  Check the box for each venue option that applies.*]

    4.      Venue is appropriate in this Court because:

        ☒ a substantial part of the events I am suing about happened in this district.

        ☐ a substantial part of the property I am suing about is located in this district.

        ☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

        ☒ at least one defendant is located in this District and any other defendants are located in California.

**INTRADISTRICT ASSIGNMENT**

[*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka.  First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties.  The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties.  The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*]

    5.      Because this lawsuit arose in __SONOMA COUNTY__ County, it should be assigned to the _SAN FRANCISCO_____ Division of this Court.

**STATEMENT OF FACTS** [*Write a short and simple description of the facts of your case.  Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put*

- 4 -

*each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.*]

Your honor, I have tried my best to explain the details of my compliant. I have researched for two years. Please let me know if anything is unclear and give me an opportunity to clarify.

**PARAGRAPH-6**

**VISITATION**

In my divorce case in Feb 2015 Dr Daniel Pickar, a clinical and forensic psychologist, was privately hired (on court's recommendation) by both parties to do an assessment of both parties and my daughter to decide custody and visitation. The report was submitted to the court in Oct 2015 and custody was given to mother and about 24% visitation to self. Mother lived in Sonoma County and self in Fremont, Ca. I used to drive every alternate Friday to pick up my daughter from school and bring her for two days to Fremont. Divorce proceedings started from 25th of Oct 2014. Visitation started in Nov 2014. Opponent counsel (Ms. Morna Challoner) had opposed visitation since day one. In her first exparte filing on 4th of Nov 2014, she portrayed me as a threat to the family and community and that I should be on "restraining order". On 18th of Nov 2014 hearing the judge found nothing of that kind. Judge and my lawyer continued to increase the visitation from ½ a day every alternate weekend to a day/overnight stay in the weekend to full alternate weekends of two days within few months. I continued to drive 300 miles each weekend to make sure my daughter meets me regularly. Due to Dr Pickar's report, in summer and winter vacation I had alternate weeks with my daughter and also a few national holidays. Dr Pickar's report stated that the year my daughter will turn twelve, she can have two consecutive weeks during summer and winter vacations. Date of 25th of Feb 2018 was decided to review visitation (but not to decide a new child visitation). There was a temp judge that day and I was absent due to unavoidable reasons. The judge and the opponent counsel together made a decision to reduce the visitation to six hours per month. I filed for review but was denied. I hired a lawyer and the hearing happened on Oct 5th, 2018. There was a new judge, Hon Shelly Averill. She was the presiding judge of Sonoma County. The previous order was terminated sighting that 25th of Feb 2018 was only for review and not for deciding a new visitation schedule. Interestingly, Dr

Pickar's report (which had cost us $11,500) was never reviewed despite me (as a self-litigant) requesting the judge to do so. The visitation was stopped completely, and mediation was put in place. Mediation report was discussed on Jan 9th, 2019, hearing. Hon Averill suggested another new review with Dr Pickar which we both declined because of the cost of about $5000. My ex-wife could have paid half (salary $18,000/mo.) and Federal funding for visitation could have been used for the rest. The judge then nominated a minor's counsel. The court nominated Ms. Kathleen J Smith as minor's counsel. On March 2019 Ms. Smith suggested indefinite counselling/therapy (no end date which several lawyers whom I talked to were surprised) for my daughter and visitation of four hours per month till counselling ends. I could not share the cost of counselling. Hon judge Shelly had mentioned "—because somebody's not paying, I'm not going to modify any orders if that hasn't happened. So, the custody orders will just remain what they are if there's no participation in the therapy because the payment's not being made." (page-15; Transcript March 7th, 2019, CSR 8131; Reporter Ms. Robyn E. Chalk). The judge knew that I was in financial hardship, and I mentioned that in court. The judge Hon Shelly Averill, Ms. Smith (minor's counsel) & Ms. Challoner (opponent counsel) never talked about supervised visitation. 42 USC 669(b) (https://www.govregs.com/uscode/title42_chapter7_subchapterIV_partD_section669b). California receives one million dollars every year as a federal grant.

My ex-wife continued with her share of therapy. The Therapist counsellor was someone whom the judge liked. I was self-litigant in these hearings. Next few months there were no efforts from the minor's counsel to even let four-hour visitation happen.  I drove each month on the scheduled date and time to have the visitation, but my ex-wife never showed up. I informed both the counsels (Ms. Challoner & Ms. Smith). I reported it to Sonoma County police dept and generated a report of no show for few months (till September). Ex-wife took the daughter to India in June summer vacation and since then Minor's counsel never came back to start the visitation again. Police dept then suggested to go back to the court. I had financial issues because my fifteen years old small business of exports/ imports stopped due to revocation of passport for non-payment of child support in May 2019 (same year). I could see and sense that the minor's counsel will not let

- 6 -

me have visitations. My daughter turned thirteen in 2019. I as a layman in law was thinking that something is wrong somewhere. My daughter was fighting fit and needed no therapy of any kind but was pushed so that I didn't get the visitation. On 1st Dec 2019 my father passed away (93 yrs. old), and I was not allowed to visit India for his last rituals. My lawyer wrote to Ms. Challoner, and she declined to make any arrangements which could allow me to travel. I still went to the visitation site (76 miles one way) on 4th of Dec to meet my daughter, but no one showed up. Since Jan 2013 I was paying about $1400/mo. for extra tuition (instructor Mr. Tim Noonan a Stanford and Harward graduate) for my son to excel on SAT & ACT tests because his academics needed it. These tests are required to get admission to most good universities for college education. Paid for additional crash courses for ACT tests in Fremont training schools. This continued till my son got into UC with Computer Science in 2016. My ex-wife did not participate in any of such activities.

**PARAGRAPH -7**

CHILD SUPPORT

A child support order was issued in Nov 2016 in Sonoma County district court. The Final Rule guideline of federal govt was published on 20th of Dec 2016. I was a self-litigant. I was not present on that date due to the severe heath conditions of my old parents at home. I informed the opponent counsel. Continuance was not asked. LCSA (Local Child Support Agency) representative was also not present. The amount was $724/mo. The calculation was submitted by the opponent counsel. The order copy was submitted to LCSA by the opponent counsel. LCSA did not present any review request. Self and my ex-wife had never spent so much on one kid ever during our seventeen years of marriage. I was at that time living in Alameda County (in Fremont) with my old parents (88yrs and 78 yrs. old). I had a small exports business. I was struggling to pay because I was working on certain innovations and had committed to spending money to bring up the product, I had a hard time paying such high child support amounts. The dual pressure of expenses was adversely affecting self and my business. I was never dependent on any federal or state welfare funds.

A self-filing to re-evaluate my child support obligation finally had a hearing in Oct 2018 and the child support increased to $861 because my ex-wife salary had increased and reduced visitation from 24% to less than 1% (six hrs./month) by misuse of discretionary power vested in district judges and unusual ways adopted by the opponent counsel (Ms. Morna Challoner) and minor's counsel. I have no bad manners. I lived a healthy life. I do not smoke and seldom drink red wine. The expenses submitted by ex-wife in FL150 form (income and expense) were never verifiable. I never missed any visitation. When visitation was available I

1) Sent my daughter to Stanford hostel for summer camp for 3D training.

2) Sent her for computer software coding classes in Fremont.

3) Arts classes to sharpen her skills in arts and painting.

4) I used to play soccer and other games with her to keep her healthy.

5) Took good care of her diet.

I paid for all the above. The local LCSA filed a contempt suit due to nonpayment which was heard in 2019. In March 2019 I ran out of passport pages and could never renew them because of pending child support arrears which were beyond $2500. USCIS sent a letter to take care of child support arrears with DCSS/HHS of California. Contempt hearing decided a lower amount of $200/mo. However, interest and actual child support amount continued to accrue.

In March 2019, due to unavailability of passport, fifteen years old export/import business came to a dead halt. I lost my rented home and all business debts started mounting because there was no cashflow. Dell filed a lawsuit for $64,000. HP debt amounted to $230,000. Several other small debts also mounted. Others started threatening to file lawsuits. Despite making several phone calls to DCSS/HHS/LCSA there was no respite. I started working as a laborer in Safeway earning a couple of hundred dollars. Child support was being deducted from it. I started living in my car and did so for about eight months. I worked as a laborer in Amazon warehouse from Christmas time till Feb 2020. That job was terminated as soon as the holiday season ended. I started driving for Lyft and delivered food for Doordash. Due to pandemic, I could afford a hotel room once in a while and regularly from April 2020 (Mountain view/ Santa Clara County) and three-time meal. I always used to be on the road to earn everyday meals and each night's rent.

- 8 -

Gasoline expenses increased to about $600/mo. Since I had an accident in Aug 2019, I had to pick up a rental car which used to charge $401/week. I had no money to pay down payment to buy a secondhand car. All my international contracts and work on innovations died completely. I was in huge debt including child support which was increasing every month with 10% interest. In Dec 2019 father passed away. My lawyer discussed with LCSA lawyer Ms. Jennifer Obergafel of Sonoma County LCSA, to let me visit India but I was not allowed. My lawyer requested the opponent counsel Ms. Morna Challoner. She also refused to let me make a trip to India to attend my father's funeral. I am the only son; The extended family and mother did not receive the whole scenario very well. After requesting Indian embassy, the international airline and the US embassy, I somehow managed to get my 80 yrs. old mother to California in August of 2020. I accepted EDD, Rent relief and CalFresh from Jan 2021 till Sept 2022, even though I knew. that I am much more capable and could have earned better. This was the first time I was accepting federal/state financial support in my life. This financial aid comes from federal and state funding. Still as of today I am on CALFRESH and looking for other financial help. from nonprofits to pay my rent and electricity bill.

Due to arrears in child support, I was not entitled for business related support from the govt during the pandemic. I am ineligible for SBA loan even as of today. Credit report has been ruined.

**PARAGRAPH-8**

**Post Pandemic Scenario**

During the pandemic, I gradually started educating myself about state and federal laws/rules/guidelines related to family law, child support, visitation, and several other aspects. When school opened in Sept 2021, I tried to revive visitation, but minor's counsel. Ms. Kathleen Smith filed ex-parte to make visitation zero. The judge & commissioner accepted it. I was in continuous touch with the school and my daughter's doctor. The reports were not encouraging at all. I was not allowed to deliver a healthy lunch for my daughter at her school. because there was no visitation allowed. The school did not deliver food to my daughter but threw it in the garbage. There was a clear violation of the visitation laws of California and federal guidelines. My

daughter's medical report mentioned that she has mineral deficiencies, and she was obese. The doctor spotted several diseases which might occur. Doctor's reports are available. In March 2022 Minor's counsel was not present in zoom video call for mediation. This issue was highlighted at the court with evidence from Zoom Communications company recording. The court did not take any action. In April 2022 hearing, the minor's counsel submitted an incorrect school progress report to influence the court decision. The presiding judge (Hon Shelly J Averill) did not provide court reporter for the two-hour hearing. I had been financially incapacitated due to unusual state child support policies (not in line with the laws and guidelines of the federal govt) and therefore could never afford to hire a lawyer. **No attempt was made to have a supervised visitation**. In July 2022 child support hearing the opponent counsel terminated further child support payment but asked the court that I must pay the arrears which was approximately $60,000. hearing. On 25th July 2022 hearing again court reporter was not provided. The court ordered $340/mo. as child support amount by imputing income in DCSS calculator. Ex wife's income was changed from $18,000/Mo to zero dollars and my negative income (I was on federal and state welfare support; CalFresh, Rent Relief, EDD) to $1820/mo. Final number was of child support to pay off the arrears was $340.00/mo.

## PARAGRAPH-9

### Approached state departments and legislature.

9) I submitted my complaint to the Judicial Council of California. I submitted details of orders by the court to JCC citing the irregularities. JCC usual response was that they cannot intervene on court decisions, or I should hire a lawyer. To approach the appeals court I needed permission from the same superior court, which was impossible to expect. In Jan 2022 I initiated the process for State Hearing about my child support and passport denial issues. When all steps were completed and was waiting for a hearing date, I heard from the DCSS/State Administrative hearing dept that there are too many allegations in my filing. The hearing was denied on the basis of Title 22, California Code of Regulations, section 120201 (22 CCR 120201). When I sighted the areas of my complaint which are within the boundaries of 22 CCR120201 for a state administrative hearing, I did not get any response. I could never present my case for the state

- 10 -

hearing. I was asked to hire a lawyer and go back to the court. That means a self-litigant cannot litigate his own case no matter how strong the arguments may be. **Throughout the year of 2022 I communicated with DCSS/LCSA/JCC/senate judiciary committee** and PDP appeal department but with no result. **I repeatedly kept asking about compliance for THE FINAL RULE, but no one said a word**. In couple of instances, they never responded or did not respond to phone calls/messages. I approached the Director of DCSS Mr. David Kilgore, Chief Consultant of DCSS Ms. Selis Kokar and DCSS Legal head Ms. Richards Shannon. They said to pay down child support arrears somehow. I explained that I have been incapacitated due to unavailability of passport (which was being used for business purposes) to start my exports business. I communicated with JCC about The Final Rule and *Review of the Statewide Uniform Child Support Guideline 2022. T*he last few pages of the report are my contribution about the need for basic expenses of an NCP (non-custodial parent) to survive. *Communicated with* legislative director Ms. Phil Sullivan of senator Kamlagar for the bill SB 1055 of 2022 highlighted the issues related to child support enforcement in the state. The bill became a law in Oct 2022. The regular driver's license of NCPs cannot be suspended despite arrears if the NCP's income is at 70% or less than 70% of the county median income where the NCP resides. The income is assessed via the Department of Housing and Community Development Division of Housing Policy Development annual report. My driver's lic was suspended in Oct 2022 and renewed immediately when I showed this new law to DCSS (SB1055 of 2022). Since last two years DCSS garnishes my bank account once each year. The bank charged $100 as bank fees and DCSS collected $113 in 2022. In July 2023 $400 was garnished from my account which I had preserved for my car loan. I had to pick up a hard money loan of $750 to pay my car loan instalment, internet, and insurance payment. The loan is at 577% interest. I have now defaulted on its biweekly payment as well. I now have two loans. At that time, I was unemployed with no income. I submitted all evidence to DCSS & LCSA. Still garnishment was executed. I later involved the governor's office in my email communication but there was no response. My case was a clear situation being portrayed in THE FINAL RULE guideline of the federal govt. (**https://www.acf.hhs.gov/sites/default/files/documents/ocse/fem_final_rule_guidelines.pdf**).

-11-

In the calendar year 2022, DCSS issued 11,383 bank levies, which resulted in approximately $48,220,000 in collections (DCSS legal services email dated 8/3/2023). Leaving aside exceptions, bank levies let LCSA prove that it collected some child support and there is an addition of one more case into their list of cases which paid child support. Thus, LCSA gets additional commission from the federal funding. LCSA/DCSS does not care whether nonpayment was "willful" or not. Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228 & The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193) are not followed. I do not think that President Clinton meant that state agencies should take away money from low-income people who genuinely cannot pay and push them to state and federal welfare. The intent of PRWORA program is much more realistic (enhance visitation & income for NCPs so that they develop stronger bonds with their kids, get out of federal and state welfare, earn their own living, and take care of their responsibilities like child support payment). Since Jan 2021 till date, I have been paid about $60,000 from federal and state funds and my situation has only worsened. I will continue to avail them probably till I die. JCC

## PARAGRAPH-10

## LEGISLATIVE APPROACH

In October 2022 DCSS director had been kind enough to send an email to confirm that there will be a bill on child support which will be brought in the legislature in 2023. Despite repeated email requests, DCSS and Judicial council of California, did not provide any information. The Judiciary committee of California also copied in some of these requests. I on my own prepared a bill proposal on child support issues and remedies for it. Shared this proposal to several members of Judiciary and other committee members from Dec 2022 -Feb 2023. The major reason for not inducting them was that their list of bills was full for the year 2023. That made me wonder how and when the state will comply with the FINAL RULE of the federal govt. In Feb 2023 I received an email from a cabinet executive of Governor Mr. Gavin Newsom that bill SB 343 has been brought to Judiciary Committee which is a child support bill to address the compliance needs of the federal govt's THE FINAL RULE.

In order to receive federal funds (about $650M), the state child support guidelines must comply with Title IV-D of the federal Social Security Act. Indeed, federal regulations require the states to review their guidelines every four years; in California, this task falls to the Judicial Council of California.  In October 2022 Family Code section 4077 was created. In the same month JCC Report title: Additional Legislative Changes Required to Bring California into Compliance with Federal Final Rule; CIRCULATING ORDER MEMOR ANDUM TO THE JUDICIAL COUNCIL (https://www.courts.ca.gov/documents/lr-2022-additional-legislative-changes-in-compliance-with-federal-rule-fam-4077.pdf) was also published which states that "Comment: This statutorily required process and the resulting proposal did not go through the invitation-to comment. process, as public review was not required by statute. Additionally, there were no points of contention or controversy when the proposal was reviewed and discussed by the relevant committees." (page-4 & 5). There is no mention as to which statute waived off public participation. There are over one million divorced parents in California. President's EO 13563 of 2011: (Improving Regulations and Regulatory review) Section 1 states that "It must allow Public participation and an open exchange of ideas". The names of the committees are not mentioned with whom the proposal was reviewed. The details of the proposal have not been provided.

"**Alternatives considered:** Judicial Council staff met and conferred with representatives from DCSS several times as required by statute." (page 5). Minutes of the meeting have not been provided in this document. The question is, how will the public know what was discussed and what were the alternatives. The federal Office of Child Support Enforcement (OCSE) previously granted California an extension until September 2024 to move into compliance with the federal final rule.  JCC/DCSS and legislature had eight years to do so. Still the legislature was in a rush. They waived public participation, delayed review of statewide Uniform Child support guideline and reinstated the old formula of child support by bringing a bill in Feb 2023. Since 1992, only four "Review of Statewide Uniform Child Support Guideline" have been published {2005, 2010, 2017 & 2022; **violation of 42 USC 667(a)**}. The 2022 review report (page 23) states that California does not want to fix a SSR because of implementation issues, such as developing business rules, modifications to automated guideline calculators, and training.  The Policy

Review report also states that California is the only state which has had such a complex formula for the last thirty years and has not been adjusted since then to cater to SSR. Well, after six yrs of extension had passed with no **work done on SSR & no research towards any innovative ways based on latest science** (EO 13563 Sec-1) the state agencies were in a rush to demonstrate conformity to the final rule by making slight changes in the old formula, waive of public participation, insert it into the bill SB343 and get it passed through the legislature. Finally, that is what had happened.

Review of Statewide Uniform Child Support Guideline 2021 published in May 2022 was a focused review to look at state policy's compliance with The final Rule. It focused primarily on the Fam Code 4055 formula and not the overall child support policy issues as per **45 CFR 302.56 (e).** The original author Ms. Jane Venohr (Center for Policy Research) indicated so in one of her emails correspondences. The contract signed between the Center for Policy Research and JCC indicated that JCC asked for the final review report in a word document. The JCC contract process needs more than one bidder for a job, however, only the Center for Policy Research was invited, and they submitted the bid. JCC accepted it. Center for Policy Research is being engaged for the last three quadrennial review reports (year 2010,2017 & 2022). JCC data shows that bid was never asked from anyone else. California has nine UCs. They have participated in research on several laws and policies. California Law Revision Commission (CLRC) also does several reviews of laws and policies. Family Law is also on the agenda of CLRC. Members of CLRC are from UC Davis School of Law. Author of SB 343, Hon Sen Nancy Skinner is also a member of CLRC. Washington Congress library defines our educational institutions as one of the pillars of democracy. The Final Rule federal guidelines talk about "Self-Support Reserve" (SSR) of the NCP which should be given priority over child support amount otherwise NCPs will face several adverse financial situations and those are not in the best interest of the children. The Final Rule guideline clearly defines the negative repercussions. The bill SB 343 does not provide any ways to calculate "Self-Support Reserve" of NCP.

The formula of Fam Code 4055 CS = K [HN - (H%) (TN)] to calculate child support does not mention anything about self-support reserve (SSR).

- 14 -

CS-Child Support

HN = high earner's net monthly disposable income

H% = approximate percentage of time that the high earner has or will have primary physical responsibility for the children compared to the other parent.

TN = total net monthly disposable income of both parties

K = amount of both parents' income to be allocated for child support as set forth in paragraph (3) OF Fam Code 4055. Basically, K is a semi constant mathematical factor which varies with the value of TN.

K (amount of both parents' income allocated for child support) equals one plus H% (if H% is less than or equal to 50 percent) or two minus H% (if H% is greater than 50 percent) times the following fraction:

| Total Net Disposable Income Per Month | K |
|---|---|
| $0–800 | 0.20 + TN/16,000 |
| $801–6,666 | 0.25 |
| $6,667–10,000 | 0.10 + 1,000/TN |
| Over $10,000 | 0.12 + 800/TN |

I asked DCSS, LCSA, Judicial Council of California, several legislative members legal counsels, lawyers of California, author of quadrennial review of child support policy, legislative committee analysts, etc. **and none have any document to prove how K formula/factors have been derived**. What were the assumptions and presumptions considered to derive K value.

Author of Bill SB 343 & quadrennial Review of Child support policy Ms. Jane Venohr (Center for Policy Research) has come up with

- 15 -

| Total Net Disposable Income Per Month | K |
|---|---|
| $0–2,900 | 0.165 + TN/82,857 |
| $2,901–5,000 | 0.131 + TN/42,149 |
| $5,001–10,000 | 0.250 |
| $10,001–15,000 | 0.10 + 1,499/TN |
| Over $15,000 | 0.12 + 1,200/TN |

What were the assumptions and presumptions considered to derive a new set of K value has never been provided by Ms. Jane Venohr in the review report of 2022. Thus, it's manual manipulation. No derivation method was illustrated in the quadrennial review report of May 2022. SB 343 also did not talk about it. Upon asking JCC/DCSS and legislative members, no one responded. **This is certainly not based on the latest science and innovation (violation of EO-13563).**

. In my communication with OCSE (Office of Child Support Enforcement) they indicated that "A self-support reserve is an amount of money, determined by the state, that a parent needs to support themselves **before establishing** their child support obligation" (email from OCSE on 7/14/2023 5.27 AM). I contacted the author 's office (Hon. Sen Nancy Skinner). I was discouraged to call and that I should send the support letter to the https://calegislation.lc.ca.gov/Advocates/faces/index.xhtml website. I was sent by email a draft of the support letter to fill and submit to this website. I wanted to submit it as "Oppose Unless Amended". However, there were no options to submit that way for an individual in the portal. I therefore submitted my letter as an organization, and it allowed me to do so. I submitted my complaint to the Rules Committee about this kind of discrimination/ issue. I submitted my letter to Ms. Allison Meredith, the Judiciary Committee analyst. We both agreed that the formula being used to calculate child support **since 1992 is a default formula.** She mentioned that in her analysis **of bill SB343 (dated 3-23-2023 page-10;2.** A brief overview of child support in California**).** The JCC report of 1992 states that this formula was adopted by the governor to

comply with the federal pressure to come up with a way to calculate child support. **The formula was never vetted by any means.** That this requirement will be revisited again to come up with something better. **That day never came, and this formula is still being used till this day**. I had a conversation with Ms. Meredith for half an hour. The analyst's report to Judiciary Committee mentioned Opposition: One single individual. No details were provided. About fifteen letters were submitted in support. Upon request the Rules committee provided those letters by email. All were 99% identical in content and language. When I asked a few support organizations to discuss, they mentioned that they were asked to just fill in the format (which was also sent to me by the author's office) of a support letter and they did. They have no good knowledge of the issues and The Final Rule.

I submitted my testimony at the hearings of Senate Judiciary Committee and the Assembly Human services committee (7-11-2023; one can view the video in senate & assembly website). Several letters to various committees to make necessary modifications and also to let go the Fam Code 4055 formula because it's a default formula and that it was a temporary arrangement of 1992. A report was published in 2019 about a pilot project conducted by DCSS along with Princeston University which had indicated that FAM CODE 4055 formula generates "unaffordable child support amounts". Each year California generates an arrears of about a billion dollars on child support. It's the highest in the nation. As of Oct 2022, DCSS reported a $18.1Bn pending child support arrears. Each year 80+% of child support cases have arrears out of about a million cases in California. Report of Subcommittee 3 of Fiscal Committee of California 2021 states that the majority of these pending arrears will never get paid/ collected. The chairperson was Hon Sen Nancy Skinner. Review of the Statewide Uniform Child Support Guideline of May 2022 of JCC has no mention about this pilot project nor any of these issues as stated in Department of Child Support services (DCSS) legislative reports. Out of a million child support cases about 570, 000 cases have zero visitation. One of the main objectives of The **Personal Responsibility and Work Opportunity Reconciliation Act of 1996** was "*Access and visitation programs*": In an effort to increase noncustodial parents' involvement in their children's lives and develop stronger bond between each other. It's in federal guidelines that the

more the visitation better is the frequency of child support payment. There is no mention of this either in the last thirty years to fix visitation issues and not even in bill SB 343(2023). Identical bill AB 1755 was introduced by Assembly Judiciary Committee. That also had no mention of "Self-Support Reserve" for NCPs. I enquired, via email, the rules committee about the dual approach (from both senate and assembly). There was no response.

_____ I communicated (via about 50 emails and several phone; records can be provided) with Senate and Assembly committee member offices, bill analysts, legislative directors of legislative members involved with this bill SB343 and explained the issue of "self-support reserve", use of thirty yrs. old default formula and the decades of lingering issues related to child support and visitation. I also narrated SB1055 (of 2022 which is now a law), which indicates that enforcement is not working. As a matter of fact, enforcements are adding to the agony of the non-custodial parents who are already facing poverty. I wrote to the Rules Committee and finally to the cabinet members monitoring this bill and to the finance director who looks at appropriations. I had two conf calls with the Finance department of California. I tried to reach the Attorney General via a website (Mr. Rob Banta), but I was never given the opportunity to explain this to him. I finally wrote to the governor Mr. Gavin Newsom and sent a few letters to him at the official fax number. There was no response. The bill SB 343 was finally passed and signed by the governor without proper modifications to show to federal govt that legislature has acted on the "The Final Rule" and it's now in compliance. From 1st of Jan 2024 California child support policy is in compliance with the federal guidelines and that $650M of federal funding should continue. However, DCSS has asked JCC for time till Oct 2026 to implement the minor changes which this bill has suggested. California will take a decade to implement. (2016-2026).

**Points to be noted:**

Bill SB 343-CHILD SUPPORT: Author-Legislative member Hon. Sen Nancy Skinner: The bill does not address "self-support reserve" for non-custodial parents. Similarly, it does not define low-income adjustment/ self-support reserve amount which should not be garnished for child support payment. Attorney Stephen E. Goldberg, although in support of this bill, did mention in

his testimony to the California state assembly Human services hearing that the current formula generates child support amounts which are" unaffordable" to low-income obligors.

**Bill SB-352(2023):** Author: Hon Sen Padilla:  California Workforce Development Board: minimum wage and housing: **As Amends the Law Today**

**SECTION 1.**

Section 14018 is added to the Unemployment Insurance Code, to read:

**14018.**

(a) The Legislature finds and declares all of the following:

(1) Currently, a household with at least one full-time minimum wage earner would have to work **more than two full-time jobs** to afford a one-bedroom apartment in most major markets in California.

(2) Nearly all households with at least one full-time minimum wage earner fall below the poverty line and the number of low-wagers earners is growing.

Point to be noted: The analysis of Bill SB352 by "**Senate committee on labor, public employment and retirement" dated April 12 2023 states the following:** "According to a University of California Berkeley, Labor Center report which provides an analysis of living wages in California, "Based on the MIT living wage calculator1, which measures income adequacy by accounting for both family composition and geography, the 2022 self-sufficiency wage in California for

☐ A single adult is $21.24.

☐ A family with two working adults and two children is $30.06

☐ A family with one working adult and one child is $43.33"

Bill SB 352 uses the latest technology of MIT (endorsed by Berkeley University) to define its needs as indicated by President's Executive order 13563. Bill SB343 still continues to follow the 1992 default formula to enforce child support requirements.

Interestingly, Hon Sen Nancy Skinner voted AYES to SB352 and

Hon Sen Padilla voted AYES to SB343

Glasmeier, Amy K. Living Wage Calculator. 2023. Massachusetts Institute of Technology. Livingwage.mit.edu  has defined different "self sufficiency wage" for different counties of California based on demographics and economics. $21.24 is an average of all. Professor Glasmeier has also mentioned that "Self-sufficiency wage" does not include several things which an American need. (https://livingwage.mit.edu/resources/Living-Wage-Users-Guide-Technical-Documentation-2023-02-01.pdf) page-3

"The living wage model is a 'step up' from poverty as measured by the poverty thresholds but it is a small 'step up', one that accounts for only the basic needs of a family. The living wage model does not allow for what many consider the basic necessities enjoyed by many Americans. It does not budget funds for pre-prepared meals or those eaten in restaurants. It does not include money for unpaid vacations or holidays. Nor does it provide money income to cover unexpected expenses such as a sudden illness, a major car repair, or the purchase of a household appliance such as a refrigerator. Lastly, it does not provide a financial means for planning for the future through savings and investment or for the purchase of capital assets (e.g. provisions for retirement or home purchases). The living wage is the *basic* income standard that, if met, draws a very fine line between the financial independence of the working poor and the need to seek out public assistance or suffer consistent and severe housing and food insecurity. In light of this fact, the living wage is perhaps better defined as a minimum subsistence wage for persons living in the United States." Bill SB 343 could have used the same theory of MIT to define "Self-Support Reserve/ Low-income adjustment.

Two full time jobs at a rate of $15/hr. = $5280/mo. (approx.). **This reflects discrimination towards low-income earner non-custodial parents for decades and will still continue.**

California revokes/ suspends the following commercial licenses of non-custodial parents. (source DCSS legal services letter dated July 8th, 2022)
Alcoholic Beverage Control
Bureau of Real Estate Appraisers
Department of Insurance
Department of Cannabis Control
California Gambling Control Commission

Commission on Teacher Credentialing
Department of Financial Protection and Innovation
Department of Consumer Affairs
Department of Fish and Wildlife
Department of Motor Vehicles
Department of Real Estate
Emergency Medical Services Authority
Secretary of State
California State Bar
California informs OCSE to **revoke passports** which stops NCPs from continuing with their business of foreign trade.

_____**TABLE-A**_____

**Projected Change in the Number of Cases Certified at Department of State for Passport**

**Denial As of March 7, 2006**

| STATE | # OF CASES NOW AT DOS | ARREARAGE | # OF CASES IF $2500 LIMIT | ARREARAGE | INCREASE IN CASES | INCREASE IN ARREARAGE |
|---|---|---|---|---|---|---|
| CA | 493,530 | $16,672,441,887 | 550,851 | $16,880,978,379 | 57,321 | $208,536,492 |

(Source: OCSE website). In 2022 this data is about 20% higher. It also shows that California arrearage was at least $16.6B in the year 2006 and it's still around this amount in 2022/23. The reason why there are so many PDP cases it's because there is no distinction made between NCPs whose arrears have gone beyond $5000/$2500 due to **"willful"** nonpayment of child support or due to genuine financial crisis in their life. DCSS legal services refrained from responding to questions related to PDP statistics. Even though transmission of PDP request to OCSE is electronic and finally to OCSE to USCIS from the states. Question arises, whether such enforcement of painting everyone with the same brush is helping in **job creation (EO13563)** and putting more people into work so that people get off the list of federal welfare schemes (**The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193). There must be several who would have lost their businesses or opportunity to excel in their life financially.**

**California DCSS garnishes bank accounts,**

**California DCSS withholds salaries, tax refunds, etc.**

These get triggered when the arrear is above $2500 ($2500 was adopted from survey report of HHS of 2006; $5000 arrear threshold was reduced to $2500). The enforcements by California without knowing whether the NCP is "willfully" not paying child support or "intending to travel for foreign trade to evade child support". **Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228**

Since 2006 till date JCC/DCSS/ Legislature has no data to prove that it has helped in collection of child support. However, further details in this complaint will show how this has only ruined people's lives in later years. (SB1055 of 2022)

There are no effective guidelines/law/CRC for visitation (this has led to 60% cases with zero visitation).

In last 30 yrs. only four Review of Uniform Child support policy has happened (JCC website). Yr. 2022 Review report was focused only on The Final Rule. It was not the overall policy review (author Ms. Jane Venohr of Center for Policy Research confirmed it by email on 7/30/2023; Ms. Anna Maves of JCC was copied to that email) as per **45 CFR 302.56 (e)**

## PARAGRAPH-11

### My current situation

As indicated, small businesses of foreign trade were adversely affected. I was thus rendered unemployed and homeless in April 2019 when the renewal of my passport was stopped and revoked by USCIS on the grounds of arrears of child support. Since then, suspension of driver's license, virtual arrest due to contempt order violation (Aug 2021, in the middle of pandemic; I was driving for Door Dash/ food delivery to hardly earn my basic living). I was not allowed State Hearing. Self-Support Reserve was neither defined nor followed, etc.

Visitation was made 1% since March 2018 {kid's age was 12yrs; no supervised visitation was encouraged. Minor's counsel (Kathleen J. Smith) appointed on 17th of Jan 2019 {Hon Shelly Averill overriding the state laws of appointment of minor's counsel (California Rule 5.242(h)}, filed an exparte motion for zero visitation and was granted via a temporary Hon Judge Boyd. Later upon complaint lodged in JCC against judge Boyd, his name was taken off from the list of judges for temp assignments. However, Cal Bar and the Supreme court did not take any action

against the lawyer Ms. Kathleen Smith. CJP did not take any action against judge Hon Shelly Averill for misuse of discretionary power in several instances in this case.

"OCSE commissioned a study in 2001/2002 of participant outcomes of State AV Programs in nine states, involving 970 cases. The study made the following findings. (https://www.acf.hhs.gov/sites/default/files/documents/ocse/essentials_for_attorneys_15.pdf) Ninety percent of parents who participated in supervised visitation characterized this service as a safe place to conduct visits."

**Essentials for Attorneys in Child Support Enforcement: CHAPTER FIFTEEN: ACCESS AND PARENTING TIME (PAGE-1)**

(https://www.acf.hhs.gov/sites/default/files/documents/ocse/essentials_for_attorneys_15.pdf" Subsequent studies revealed that two-thirds of parents with frequent contact with their children paid child support, while only one-third of those with no contact made payments."

Since I lost my small exports business (April 2019), my work on a few inventions and businesses are also dead. I spoke to SCORE in Oct 2021 and had conference calls with their experts. Enforcements have not increased my income or let me improve my financial position till date to pay child support. The only way DCSS/LCSA is collecting couple of hundred dollars from me each year is by enforcing garnishment or withholding from my meagre income which is nowhere near to $5240/mo. I cannot apply for jobs which need international travel. Lastly, I am above 56 yrs. of age and counting. It's an untold truth that hardly any employer will offer me a high paying job, (when records indicate that I failed in my business; not because of my abilities but because of California child support policies) to pursue my professional ambition and also take care of child support. DCSS own survey and reports of pilot project ( https://www.urban.org/sites/default/files/publication/100812/relief_from_government-owed_child_support_debt_and_its_effects_on_parents_and_children_4.pdf ; page7) clearly indicates the child support orders are "unaffordable". One NCP/participant died during the pilot project. 99% of the child court orders are from FAM CODE 4055 formula which has no consideration of SSR (SSR has been in federal guideline for decades). Pulling me out of business due to arrears and forcing me to mediocre jobs (Safeway labor job, Lyft, Doordash, Amazon

- 23 -

labor job, etc.) and then enforce child support payment, which are already proven that they are unaffordable by California's own pilot projects, seems inhuman. That too without figuring out whether non payments are **willful** or not. Whether foreign trade business travel is to **evade child support or not (Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228). It also does not justify that by imposing enforcements whether California is in full compliance to "The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193)".**

Interest is growing by 10% each year in the accrued child support. Year after year unpaid child support is mounting. Aug 2022 child support modification hearing did terminate further child support payment; however, the arrears are way beyond the amount which one can pay with such ordinary jobs at my age. In May 2019 when my passport renewal was stopped, total pending arrears were $22,784.93. As on date (Nov 2023), the arrears are $66,517.31. Net increase of **$43,733** (One day/month visitation from March 2018 till March 2019 & since then zero visitation till date). Total amount paid $4,733.69 till date. In Nov 2021 I had applied for child support modifications. On 25th of July 2022 the court imputed my negative earning to $1820 and made my ex-wife $18,000+/mo. (imputed). earning as zero to come up with $340/mo child support payment.

| Monthl Tax/Income Information (Tax Year: 2022) | NCP | Other Parent |
|---|---|---|
| Monthly Net Disposable Income | 1581.00 | 0.00 |
| Monthly Taxable & Non-Taxable Gross Income | 1820.00 | 0.00 |
| Monthly Taxable Gross Income | 1820.00 | 0.00 |
| Monthly Non-Taxable Gross Income | 0.00 | 0.00 |
| Federal Adjusted Gross Income | 1820.00 | 0.00 |
| Federal Taxable Income | 774.00 | 0.00 |
| Net Income After Support | 1241.00 | 340.00 |
| Federal Tax Filing Status | SINGLE | HEAD OF HOUSEHOLD |

Reason given was.

"In the event that there is a contract between a party receiving support and a private child support collector, the party ordered to pay support must pay the fee charged by the private child support collector. This fee must not exceed 33 1/3 percent of the total amount of past due support nor may it exceed 50 percent of any fee charged by the private child support collector. The money judgment created by this provision is in favor of the private child support collector and the party receiving support, jointly."

**Fam Code: 17520(g)(2)** was overlooked.   "It is the intent of the Legislature that a court or **local child support agency,** when determining an appropriate payment schedule for arrearages, base its decision on the facts of **the particular case** and the priority of payment of child support over other debts. **The payment schedule shall also recognize that certain expenses may be essential to enable an obligor to be employed**. Therefore, in reaching its decision, the court or **the local child support agency** shall consider **both goals** in **setting a payment schedule for arrearages."** Which leads to noncompliance of The Final Rule because it leads to  ordering child support payment which is not in my capacity to pay. It has further pushed me into poverty and depend more upon state and federal welfare. Noncompliance to PRWORA

Later, LCSA lawyer Mr. K Morgan asked me to pay $214/no without modified court order. My EDD payment was discontinued in Sep 2021. However, CalFresh+ Rent Relief (of some form) continued.   I am unable to pay $214/mo. because I am behind on rent payment of $2240+$80(utility) per month for the last two months. Since last year or so, I developed severe health issues due to working unusual jobs and hours. In June 2022 doctor Pham of Kaiser Permanente said that my blood report was of a "dead man". I had to reduce my work hours and get some sleep with medications. There is no guarantee in Doordash delivery job that I will earn at least $15/hr. even when I am driving for 8-12 hrs. a day. For several weeks I drove for 100+ hours in a week. Gas expense continues to rise, and car accrues more than 3000 miles per month. As on date I am still on CalFresh. Recently, a government funded organization paid three months of rent. I have no savings to take care of any emergency. When I was in business, I always had some money for emergencies. If my car breaks down, I have nothing to repair the car. If I pay one bill, then the other bills remain unpaid.

In Sept 2021, mother was admitted to the El Camino hospital (83 yrs. old). It was a 911 case. I requested the court to allow my daughter to visit her grandmother. The court declined it. Minor's counsel (Ms. Kathleen J Smith) and opponent counsel (Ms. Morna Challoner) didn't even bother.

**PARAGRAPH-12**

**DCSS legislative data & DCSS child support calculations**:

Department Of Child Support Services of California website provides an online calculator based on Fam Code 4055 formula https://childsupport.ca.gov/guideline-calculator/ . This year the Low-income adjustment is $2406.00. If NCP gross income is $2406 or lower, the calculator still gives a range of child support amount. **It does not give priority to the NCP self-support reserve/ subsistence expense amount because there is no fixed self-support reserve defined by the state (SSR) (as per this review report or as per bill SB 343) based on the demography of California.** SSR is not in the formula CS = K [HN - (H%) (TN)]. Since NCP will be unable to pay that child support amount, it continues to add up to its arrears and attract 10% interest. Family code section 4055 formula is such that lesser the visitation higher is the child support amount. As soon as the arrear goes beyond $2500, which will happen very quickly, due to visitation being zero on 60% of the cases, all kinds of enforcements will apply, and the individual will be pushed to eternal poverty. Federal funds & state funds like CALFRESH, etc. will be used by NCP for survival. As per Final Rule, the Self Support reserve should be a dollar amount which state should define and, on that amount, there should not be any child support. The state of Arizona imposes zero-dollar child support on their Low-Income Adjustment/ Self-support reserve. Otherwise, the purpose of The Final Rule is defeated, and arrears will continue to grow and become unpayable. It also defeats the purpose of **Personal Responsibility and Work Opportunity Reconciliation Act of 1996.** The intent of this Act was to put more people into jobs so that less federal funding is required to support people for survival, and they take care of their respective responsibilities including child support obligations. The state fails to realize that use of such formula, CS = K [HN - (H%) (TN)], and current enforcement structure are not only ruining the lives of millions of NCPs and children but also adversely affecting the federal and state economy.

- 26 -

## CHART-1

|  | Current Support Due ($) | Current Support Distributed ($) | Current Arrears ($) | Cases | Cases with support order established | Cases with Arrears Due | %age Cases NCPs unable to pay CS |
|---|---|---|---|---|---|---|---|
| Fed Fiscal year 2018 | $ 2,417,534,377.00 | $ 1,607,598,982.00 | $ 809,935,395.00 | 1,163,115 | 1,064,924 | 858, 669 | 80.63% |
| Fed Fiscal year 2019 | $ 2,480,813,902.00 | $ 1,652,301,961.00 | $ 828,511,941.00 | 1,130,263 | 1,040,506 | 846,287 | 81.33% |
| Fed Fiscal year 2020 | $ 2,522,228,062.00 | $ 1,676,894,984.00 | $ 845,333,078.00 | 1,088,672 | 1,002,777 | 826,613 | 82.43% |
| Fed Fiscal year 2021 | $ 2,511,906,257.00 | $ 1,670,792,328.00 | $ 841,113,929.00 | 1,043,847 | 968,217 | 797,487 | 82.37% |
| Fed Fiscal year 2022 | $ 2,527,225,325.00 | $ 1,593,993,789.00 | $ 933,231,536.00 | 1,046,265 | 948,467 | 774,526 | 81.66% |

SOURCE: **CALIFORNIA** DCSS LEGISLATIVE REPORTS:

DCSS reports/data are unaudited. Last time DCSS was audited in 2005/2006 (Confirmed by California Finance dept). DCSS did not send an audited report when enquired directly.

https: //dcss.ca.gov/reports/?__cf_chl_tk=J3WtcPW8dU0R8rkPfuBQSAsgqLP_z9Atq1l5CctluA8-1701643010-0-gaNycGzNDns  Chart-1 shows the last five year tabulated data of how much was supposed to be collected, how much was actually collected and in what percentage of cases had arrears. As per the DCSS legislative reports available of last five years, year after year in 80+% cases NCPs are unable to pay child support and arrears have increased beyond $18+Bn as of today as per 27th Jan 2022 letter issued by DCSS legal department on my request for information. "As of October 1, 2022, the child support arrears amount owed is $18,042,518,887."Federal data indicates that 75% of child support collections are by wage withholding. All enforcement mechanisms collect only 25%. For example, for the Fed Fiscal year 2022 enforcement collected $398,498,447.25 of 1,593,993,789.00. The above chart also confirms that the formula being used to calculate CS is unaffordable ( DCSS pilot project of 2018/2019; https://www.urban.org/sites/default/files/publication/100812/relief_from_government-owed_child_support_debt_and_its_effects_on_parents_and_children_4.pdf ; page7) because of which about 80% of the cases have defaulted in making child support payments. DCSS data shows

that about 600,000 cases receive only one month of child support payment. Can we say that child support policy and enforcement are not working. There is something incorrect in the way the default formula CS = K [HN - (H%) (TN)]. is producing child support amounts and as a result enforcement is being implemented. Chart-2 states total number of cases (88,477) closed in 2022 due to balance payoff:

### CHART-2

(Source: DCSS legal services letter dated OCT 12TH 2023.

| # of cases | # years old from time of first opening | Amount Collected in 2022 |
|---|---|---|
| 31,837 | >16 years old | $50,796,122.74 |
| 19,079 | 11-15 years old | $22,675,719.62 |
| 16,563 | 6-10 years old | $19,496,215.83 |
| 20,998 | 0-5 years old | $24,795,243.09 |

Row 1 shows 31,837 cases were closed which were 16 yrs. or older. Arrears paid $50.8M This clearly states that the custodial parent got most of the payment when the kid/kids were already adult. The collection of arrears has not helped the kids when they were really looking for money during their upbringing. If we look at chart -1 & 2 it's not hard to figure out that arrear collection in 80+% cases happened when children were already adult. All these years most of the NCPs were captive of poverty and (bereaved of commercial and driving licenses, etc. living on federal welfare). Thus, their own living cost increases and they are pushed to **unsurmountable debt and loss of jobs**. Some get into **the underworld economy** (as mentioned in THE FINAL RULE). These are neither in the best interests of the children nor the nation. Efficient implementation of policy "The Personal Responsibility and Work Opportunity Reconciliation Act of 1996", all others mentioned in page-2 and then making suitable laws for enforcements and implement them on people who **"willfully"** default. I understand child support is a serious requirement of our society and the upbringing of children. Policy does not mean that enforcement of laws should happen without verifying whether NCP defaulted **"willfully"**. Federal Register 93492 Vol 81No224 https://www.govinfo.gov/content/pkg/FR-2016-12-20/pdf/2016-29598.pdf states the following: **"SUMMARY:** This rule is intended to carry out the

President's directives in Executive Order 13563": **Improving Regulation and Regulatory Review. EO 13563**: "Section 1. General Principles of Regulation. (a) Our regulatory system must protect public health, welfare, safety, and our environment while promoting economic growth, innovation, competitiveness, **and job creation**. It must be **based on best available science**." The current child support calculator is neither based on best available science and nor it's helping in health, welfare, economic growth and job creation. EO 13563(2011): "It must promote predictability and reduce uncertainty. It must identify and **use the best, most innovative**, and **least burdensome tools** for achieving regulatory ends. It must take into account benefits and costs, **both quantitative and qualitative**." None of these guidelines are being met with the 30 yrs. old default formula of the child support calculator. It's giving "unaffordable child support amounts" for decades. If I go through EO 13563 & 12866, the current policy does not meet the salient guidelines of President's executive orders in several areas. I enquired from the Department of Child Support Services of California about child support (CS) amounts on few samples' income amounts of both parties (NCP &CP) for 20% and 0% visitation of one child respectively. **Identical samples of income amounts were also used to see what difference it will make when bill SB343 becomes a law. Chart-3** is the data provided by DCSS legal services on 06/08/2023. **Column 10** talks about child support as of 2023 and **column 12** when bill SB 343 will become a law. If we look at 0% visitation (H 0% visitation) **row SR NO-8** states that even when NCP earning is $1300 (which is way below $5280)

## CHART-3

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SR NO | NCP (Gross) | NCP (Net) | CP (Gross) | CP (Net) | TN | H (0%) Visitation | H Multiplier | K (Current) | CS (Current) D CSS Calc | K (SB 343) | CS (SB 343) |
| 1 | $4,933 | $3,921 | $4,930 | $4,310 | $8,231 | 0.00 | 1.00 | 0.22 | $868.00 | 0.2500 | $980.25 |
| 2 | $3,500 | $2,880 | $3,400 | $3,179 | $6,059 | 0.00 | 1.00 | 0.25 | $720.00 | 0.2500 | $720.00 |
| 3 | $2,900 | $2,427 | $2,800 | $2,793 | $5,220 | 0.00 | 1.00 | 0.25 | $607.00 | 0.2500 | $606.75 |
| 4 | $2,740 | $2,306 | $2,600 | $2,662 | $4,968 | 0.00 | 1.00 | 0.25 | $576.00 | 0.2489 | $573.89 |
| 5 | $2,500 | $2,125 | $2,450 | $2,565 | $4,690 | 0.00 | 1.00 | 0.25 | $531.00 | 0.2423 | $514.83 |
| 6 | $2,000 | $1,742 | $1,950 | $2,240 | $3,982 | 0.00 | 1.00 | 0.25 | $435.00 | 0.2255 | $392.78 |
| 7 | $1,500 | $1,346 | $1,450 | $1,820 | $3,166 | 0.00 | 1.00 | 0.25 | $336.00 | 0.2061 | $277.43 |
| 8 | $1,300 | $1,197 | $1,260 | $1,652 | $2,849 | 0.00 | 1.00 | 0.25 | $299.00 | 0.1994 | $238.66 |

- 29 -

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 19 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SR NO | NCP (Gross) | NCP (Net) | CP (Gross) | CP (Net) | TN | H (20%) Visitation | H Multiplier | K (Current) | CS (Current) D CSS Calc | K (SB 343) | CS (SB 343) |
| 9 | $4,933 | $3,921 | $4,930 | $4,310 | $8,231 | 0.20 | 1.20 | 0.27 | $605.00 | 0.3000 | $682.44 |
| 10 | $3,500 | $2,880 | $3,400 | $3,179 | $6,059 | 0.20 | 1.20 | 0.30 | $500.00 | 0.3000 | $500.46 |
| 11 | $2,900 | $2,427 | $2,800 | $2,793 | $5,220 | 0.20 | 1.20 | 0.30 | $415.00 | 0.3000 | $414.90 |
| 12 | $2,740 | $2,306 | $2,600 | $2,662 | $4,968 | 0.20 | 1.20 | 0.30 | $394.00 | 0.2986 | $391.94 |
| 13 | $2,500 | $2,125 | $2,450 | $2,565 | $4,690 | 0.20 | 1.20 | 0.30 | $356.00 | 0.2907 | $345.09 |
| 14 | $2,000 | $1,742 | $1,950 | $2,240 | $3,982 | 0.20 | 1.20 | 0.30 | $284.00 | 0.2706 | $255.85 |
| 15 | $1,500 | $1,346 | $1,450 | $1,820 | $3,166 | 0.20 | 1.20 | 0.30 | $214.00 | 0.2473 | $176.30 |
| 16 | $1,300 | $1,197 | $1,260 | $1,652 | $2,849 | 0.20 | 1.20 | 0.30 | $188.00 | 0.2393 | $150.06 |

there is a child support amount of $299 as of 2023 and $238 when SB343 will become a law. This NCP will still default on his/her payment of child support of $238.00. Since public review/ participation was avoided by the state such mistakes are obvious. SB343 floor analysis dated 09-06-2023 page 9 states the following "Because this bill changes the way child support obligations are calculated, it will likely impact the total amount of child support collected in the state (GF; general fund). **DCSS cannot quantify** how the bill will affect the net amount of child support collected but notes the bill may increase payment amounts to families while reducing arrears". The above statement is mentioned in several other analysis reports of bill SB 343 (which is now a law effective 1ˢᵗ of Jan 2024).

Your honor, DCSS who manages this child support enforcement and collection are themselves not sure. The above chart **shows that NCP with gross income of $4933 in Sr No 1 & 9 in the chart-1 (less than $5280; SB352) will pay more child support once SB343 becomes a law**. Thus, collection will increase because higher wage earners will now pay even more child support. Even though low-income NCPs will be unable to pay the revised child support, the revised lower child support will accrue lesser arrear. DCSS legislative and federal reports will show better collection and lesser arrears, even when low-income NCPs will continue to suffer due to the new law SB343. NCPs just above the new LIA mark of $2900 will be asked to pay more child support. It's highly likely that they may end up having financial issues and look for federal and state welfare assistance. Some of them will get onto the list of defaulters. The question is how large the difference will it make in the percentage of defaulters. Will it now be

20% defaulters instead of 80%. The answer is "NO". Does California want to settle with 70-80% defaulters and still claim that the overall child support policy and LIA are working. Does California want to settle with 70% of children waiting for arrear payment to survive during their upbringing. The revised calculator seems like improving the presentation of the legislative report rather **than seriously addressing child's best interest**. There are several ways the state can make things much better where each and every child will get its share of child support money on time during upbringing. I will need a whiteboard to explain.

**PARAGRAPH-13**

**LIA of California**

As per "The review of California's statewide uniform child support guideline" of May 16th, 2022, https://www.courts.ca.gov/documents/Review-of-Uniform-Child-Support-Guideline-2021.pdf

Federal register of The Final Rule has left in the hands of the state lawmakers to define SSR based on their demographic needs https://www.govinfo.gov/content/pkg/FR-2016-12-20/pdf/2016-29598.pdf page-28

*"3. Comment:* Several commenters suggested that we define subsistence needs or low-income in this rule. *Response:* OCSE does not agree with this suggestion. States should use their discretion and flexibility to define these terms based on the **economic and demographic factors in their State**."

California economic and demographic indicates as follows:

a.  38 counties are rural with 60% land area.

b.  14 counties are semi-rural/semi urban.

c.  6 counties are urban.

In pages 123/124 and exhibits 27, 26 & 29 it brings in "Proposed K factors". There is no scientific explanation provided how these "**proposed K- factors**" have been calculated anywhere in the document. They have been just added. **Mathematical calculations are not provided**. The author cannot provide it because there is no document on K-factor which exists with JCC/state of California. The author just proposes these numbers (violation of EO 13563, no scientific

justification). The author further brings in SSR values which are derived from old data and connects it with a case of "In City and County of San Francisco v. Miller (1996)". It again takes help of default calculator of DCSS to calculate child support in Exhibit-30 & 31. A calculator which has been derived from Fam Code 4055 and it was already understood in 1993 that it's a default formula (JCC report of 1992/93). The author still uses the same formula after 30 yrs. (violation of EO 13563) In Exhibit 31 it states that "Monthly net disposable income **after support**- $1378" as the SSR. That means each time net disposable income **after child support** is the SSR**. That relates to 1.1 million cases and there will be 1.1million SSRs.** One can find this in subsequent pages (page-133). California therefore does not have any specific SSR based on economic and demographic factors and it's LIA is of no significance. OCSE defines SSR as follows: "A self-support reserve is an amount of money, determined by the state, that a parent needs to support themselves **before establishing** their child support obligation" (email from OCSE dated 7/14/2023 5.27 AM). Federal objective to secure a fixed amount of money needed for the NCP's own survival based on demographic and economic data is missing. Therefore, it also is not in compliance with federal guideline of The Final Rule and EO 13563 (Improving Regulation and Regulatory Review)

7/20/23, 12:06 PM                                                                    Mail - rajesh sinha - Outlook

Inquiry Number: INQ00045944

## Office of Child Support Enforcement <ocse@servicenowservices.com>

Fri 7/14/2023 5:27 AM

To:rajeshsinha2005@hotmail.com <rajeshsinha2005@hotmail.com>

Dear Mr. Sinha,

This email acknowledges we received your inquiry dated July 13, 2023. You asked what "self-support reserve" mean.

A self-support reserve is an amount of money. determined by the state. that a parent needs to support themselves before establishing their child support obligation. Each state determines its self-support reserve. It is usually a certain percentage of the federal poverty guidelines. The self-support reserve recognizes that parents at the lowest income levels need a basic amount of money to live on before being able to pay child support.

Excerpts from OCSE email about Self-support reserve

The federal govt has given the flexibility to the state to choose the way it would like to implement "low-income adjustment such as self-support reserve". However, it also expects the state to follow

- 32 -

EO-13563 such as it should be based on public participation and open exchange of ideas, scientifically proven, based on latest innovations, should not be a burden to the public, economic growth, job creation, easy to understand, promote predictability & reduce uncertainty and provide alternatives. Finally, the objectives of PRWORA should be met such as consistent visitation, more people on the jobs to take care of their personal responsibility and reduce federal funding year after year since 1996. To make sure all these are appropriately implemented laws like **45 CFR 302.56, 45 CFR 301.13 and 42 USC 669(b)** are in place so that state operates in sync with the federal government to make sure Californians (including self) are governed with the best laws and rules to move on with our lives after divorce, live a decent and respectable life and also take care of the children.

## PARAGRAPH -14

### Laws, Rules, Guidelines and Programs

Your honor, to the best of my understanding, President's Executive orders are a broader framework for federal and state agencies to make effective laws and rules for the benefit of the people. Federal agencies guidelines and laws adhere to the president's executive orders to further make specific guidelines for specific functions of the state. Related state agencies need to abide by it. State agencies have the flexibility to structure the state laws and regulations which best suites the geographic and demographic structure of the state. However, the state still needs to follow President's Executive orders and the objectives of the federal government in their respective law-making processes. State has the flexibility to retroactively fix a law, not to hurt a specific individual or a community, but to follow the guidelines so that state and the federal are seamlessly attached together in achieving the umbrella objectives.

A. **The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193) & EO13563**

**Objectives:** Put more people to work so that they get off the list of federal welfares and take care of their personal responsibilities (like child support). Help bonding between children and their parents by increasing visitation.

**Comment:** Cases in which enforcements are implemented to forcibly pay and further takes away jobs, business licenses, affects visitation, etc. lead to objective not met.

**B.  Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228**

**Objective:** Those NCPs who willfully not pay child support or travels in interstate or foreign commerce with the intent to evade a support obligation should face enforcements

**Comment:** Cases where NCPs are not willingly able to pay child support or not travelling to evade child support payment and their passports are revoked or victim of enforcement of any kind lead to federal objectives not met. This will lead to repercussions on job creation, joblessness, etc. EO 13563 not being followed.

**C.  The Final Rule**: 93492 Federal Register / Vol. 81, No. 244 / Tuesday, December 20, 2016 / **Rules and Regulations**

**Objective:** Child support orders should be based on the actual ability of the NCP. Child support guidelines **must** take into consideration the basic subsistence needs of the noncustodial parent who has a limited ability to pay by incorporating a low-income adjustment, such as a self-support reserve, or some other method determined by the state. In my communication with OCSE (Office of Child Support Enforcement) they indicated that "A self-support reserve is an amount of money, determined by the state, that a parent needs to support themselves **before establishing** their child support obligation" (email from OCSE on 7/14/2023 5.27 AM). **Federal guidelines give the state the flexibility to implement LIA/Self-**support reserve/subsistence needs since each state has different geographic and demographic structure. However. it states that LIA/self-support reserve/subsistence expenses should be implemented **before** establishing the NCPs child support obligation.

**Comments:** California's JCC report says otherwise. The review of California's statewide uniform child support guideline" of May 16th, 2022, page 133 clearly states the following: "Several observations can be made from the graphical comparisons: The SSR Test generally reduces order amounts more than an updated LIA income threshold. One reason why is that the SSR Test is not limited by an income eligibility threshold. **Rather, it is based on ensuring that** the income remaining **after** paying the full child support order is at least sufficient to cover the

amount of the **SSR."** This means LIA/self-support reserve/ subsistence needs of the NCP holds **second priority** to their child support obligation. While OCSE states that it should be given priority over child support. SSR/LIA/Subsistence needs of an NCP is a speculative number which changes with each case child support calculation. It's not based on geographic and demographics of the state. Several NCPs living in the same county will have different LIA/SSR. Thus, manually modifying K-factor of the Fam code 4055 formula CS = K [HN - (H%) (TN)]. in the review report does not make any difference. **The objective of the federal guideline is not met.** There is a conflict. All in all, the California Child support policy and the new modified default calculator/formula had always been and is an obstacle to federal objectives.

On 10-27-2023 I enquired about LIA/SSR/Subsistence expense of NCPs of California from JCC officials (Ms. Anna Maves. Ms. Curren Shelley, Mr. Robert Oyung, Ms. Charlene Depner, Ms. Tracy Kenny, Ms. Millicent Tidwell and Ms. Elva Velasco). I was directed to "The Final Rule" Guideline, summary and the federal register. I am therefore convinced OCSE/ federal definition of SSR/LIA should be a dollar amount which needs to be defined "before" child support amount is established and that's not the case in "The review of California's statewide uniform child support guideline" of May 16th, 2022" and the author Hon Nancy Skinner has been misguided to use the same in her bill SB343.

**Procedural Deficiencies**

1. **45 CFR 302.56/ 42 USC 667(A):** The review of California's statewide uniform child support guideline has been only four times in the last thirty years in different years. In none of them EO 13563 has been followed. Public participation had been minimal. No innovative technology or science has been used. None have addressed the issues which are apparently reflected in the DCSS legislative reports (80+% defaulters year after year pg23-chart-1, unaffordable child support amount, no mention of SSR dollar amount based on demographic of California, LIA is inconsistent with federal guideline)

2. **45 CFR 301.13:** https://www.ecfr.gov/current/title-45/subtitle-B/chapter-III/part-301/section-301.13. Your honor the state has not yet submitted the child support plan to OCSE office for review ever.

**Comment:** I enquired from OCSE via email whether the state has followed the review process, and copied to ASH@hhs.gov <ASH@hhs.gov>; onc@hhs.gov <onc@hhs.gov>; oga@hhs.gov <oga@hhs.gov>; cio@hhs.gov <cio@hhs.gov>; ACF-OIGLiaison@acf.hhs.gov <ACF-OIGLiaison@acf.hhs.gov>; oig@hhs.gov <oig@hhs.gov>; asfr@hhs.gov <asfr@hhs.gov>; ocr@hhs.gov <ocr@hhs.gov>; iea@hhs.gov <iea@hhs.gov>; Samantha (HHS/OGC) <samantha.austin@hhs.gov>; asa@hhs.gov <asa@hhs.gov>; omha@hhs.gov <omha@hhs.gov>; Samuel (HHS/OGC) <Samuel.Bagenstos@hhs.gov>; acl@hhs.gov <acl@hhs.gov>; cms@hhs.gov <cms@hhs.gov>; hrsa@hhs.gov <hrsa@hhs.gov>; ahrq@hhs.gov <ahrq@hhs.gov>; aspr@hhs.gov <aspr@hhs.gov>; nih@hhs.gov <nih@hhs.gov>; Daniel J (HHS/OGC) <Daniel.Barry@hhs.gov>; OCSE DPT (ACF) OCSE.DPT@ACF.HHS.GOV. I did not get any response from anyone. I generally get responses from OCSE in most of our questions.

3. **42 USC 669(b):** https://www.govregs.com/uscode/title42_chapter7_subchapterIV_partD_section669b **42 USC 669(b)(a)**"The Administration for Children and Families shall make grants under this section to enable States to establish and administer programs to support and facilitate noncustodial parents' access to and visitation of their children, by means of activities including mediation **(both voluntary and mandatory)**, counseling, education, development of parenting plans, visitation enforcement (including monitoring, supervision and neutral drop-off and pickup), **and development of guidelines for visitation** and alternative custody arrangements." The Federal govt issues grants to the state of California for $1M for enhancing visitation for NCPs and the state has made no further contribution ever (JCC records). "**Zero time-sharing is still the most common time-sharing** arrangement when calculating support for IV-D orders. **Just over half (54%) of IV-D orders** are calculated indicating the child spends no time with the obligor". **Page-27** *Review of the Statewide Uniform Child Support Guideline 2022*

**Comment:** In my case the court could have paid Dr Pickar to review our child visitation and custody. Federal objective not met for regular visitation.

4. **EO 13563** Your honor, I have described the violation of several salient features of this order by state in laws and rule formation in my complaint.

**PARAGRAPH-15**

**Judiciary of California**

California has thirty-eight non accredited law schools. The next highest in our country is Texas which has ten non accredited law schools. In Sonoma County district court presiding judge, a few other judges, LCSA lawyers and several local lawyers are all from the same local law college (Empire College School of Law/ Empire College of Law). When Empire College of Law lost its license from ACISE (Accreditation Council for Independent Colleges and Schools; its license was revoked by DOE of United States) it resumed affiliation with Monterey College of Law.  Monterey College is not registered as accredited college anywhere. It also says that it's a nonprofit organization. It does not fulfill the Title IV requirements and the corporate laws and CRC rules. On 02-02-2023 I enquired Cal Bar of California whether a non-profit company can open a branch company (Empire College of Law) which is a profit-making company. California Bar never responded. This raises concern about the state's laws and rules for allowing law schools to run business. It also raises concerns about the method of appointing commissioners and judges. **In my specific case in Sonoma County Superior court the following are all from the same college Empire College School of Law/ Empire College of Law of Santa Rosa, CA:**

- Presiding judge Honorable Shelly Averill (all judges were lawyers before)
- Judge: Hon. Lawrence E. Ornell
- Ms. Jennifer Obergefell, LCSA lawyer
- Mr. K. Morgan, LCSA lawyer
- Commissioner in the court Mr. Paul Lozada (appointed in Nov 2021 by the governor)
- Minor's counsel Ms. Kathleen J. Smith
- Ms. Morna Challoner Lawyer to ex-wife

The appointment and placement of commissioners and judges of the same law college in the same county court where the college is will lead to biased behavior, was not in the minds of the state during the appointments of judges and commissioners. In March 2022, I shared my concern with a member of JNE (Judicial Nominees Evaluation). JNE assists the governor in the judicial selection process. I could sense the biased behavior of judiciary as a self-litigant and with ZERO visitation despite federal law and guidelines for more visitation is mentioned in several places 1) Personal

-37-

Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193) 2) Essentials for Attorneys in Child Support Enforcement (chapter fifteen) (https://www.acf.hhs.gov/sites/default/files/documents/ocse/essentials_for_attorneys_15.pdf.

3) Importance of fathers in the healthy development of children (92% of NCPs are fathers) ; https://cantasd.acf.hhs.gov/wp-content/uploads/Importance-of-Fathers-Healthy-Development.pdf (Approximately two-fifths (page-6 ; **40.8 percent** of child victims were maltreated by their mothers acting alone; another **18.8 percent** were maltreated by their fathers acting alone; and **16.9 percent** were abused by both parents)

4) 42 USC 669(b) Grants to States for access and visitation programs https://www.govregs.com/uscode/title42_chapter7_subchapterIV_partD_section669b Federal govt provides $1M each year to California. California state has no financial contribution to this program (source-JCC email).

I was doing all the right things as a father; then why did state judges and lawyers go against the federal guidelines. I highlighted my issues and court orders to JCC. JCC asked me to hire a lawyer. The constitution gives us the right to self-represent. I understand that not all cases are the same. However discretionary power is used when either the law is not clear, or the case is complicated. Neither of them applies in my case. Visitation is the only way non-custodial parents can remain in touch with their kids and continue to develop emotional bonding. NCP can remain abreast of day-to-day issues which the child is facing and could share their thoughts and feelings with the NCP. Kids and NCP will understand each other in much better fashion when regular visitation is going on. Not everything a kid can share with one parent. They need a second outlet for their thoughts and emotions. Each parent has their own way of explaining things to the kid. Money is not everything. I continued to bear the humiliation from the school, minor's counsel, the court and finally daughter's doctor. However, I continued to review her school reports and medical reports till the doctor cooperated. The school principal cooperated to a very great extent. The commissioner declined to accept school real reports. After Aug 2022 I lost hope of getting any visitation.

ATTACHMENT: Fact Sheet of Bill SB1055 of 2022

## CLAIMS

**First Claim**

(*Name the law or right violated*: __1)    President's Executive Order 12866 & 13563; Public Participation in rule making.

(*Name the defendants who violated it*: State of California; Legislature, Judicial Council & DCSS)

[*Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

**Public Participation in rule making:**

Executive Order 12866: Regulatory Planning and Review (E.O. 12866) (1993)

Executive Order 13563: Improving Regulation and Regulatory Review (2011)

(Pls review page 11,12 &16 of this document.)

Both executive orders state that public participation is a must in rule making. However, formation of Fam Code 4077 and Additional Legislative Changes Required to Bring California into Compliance with Federal Final Rule; CIRCULATING ORDER MEMOR ANDUM TO THE JUDICIAL COUNCIL (https://www.courts.ca.gov/documents/lr-2022-additional-legislative-changes-in-compliance-with-federal-rule-fam-4077.pdf) had no public participation. I regularly sent emails to DCSS director Mr. David Kilgore and LCSA representative of my case about the Final Rule and how revocation of my passport has impacted my income, business and that California is not fully in compliance with The Final Rule of federal govt. On 5th of October 2022 Mr. Kilgore sent an email stating the following: "The legislature is currently reviewing the child support calculator now.  I would recommend you direct your suggestions and recommendations to them for consideration.  You can do this through the legislator in your area or to the judiciary committees of both the Senate and Assembly." Until the bill is introduced in the legislative session, how can anyone know what the members are planning to bring in next year's session. Bill SB 343 was in the making. I asked for more details, but they were not provided. I sent emails to members of Judiciary committee. It's interesting to see that Fam Code 4077 and the above meetings were going on among DCSS, JCC, Judiciary Committee and the author of bill SB343 but

no one informed me even when I was in constant touch with them. This shows the violation of EO 13563+ EO12866 which talks about public participation. One can pick any Title of US CODES, and all have asked for public participation. I was not able to provide my input. I could have then brought in a few other NCPs to discuss the recommendations and had helped the legislature to make a realistic bill. I could have suggested new methods of calculating child support. The legislature can retroactively fix child support obsolete laws which trigger unrealistic enforcements and create severe issues as discussed in SB 1055(2022 which is now a law). California misses the essence of **Public Law 105-187 & PRWORA.** This process would have started when The Final Rule was introduced in Dec 2016. Needless to say, that The Final Rule was made (federal register for The Final Rule) where all stake holders of each and every state were involved. The legislature, DCSS & JCC were involved in the making of it. The formula of Fam Code 4055 still generates high child support amounts. I remain incapacitated and continue to remain poor without any way to lift myself out of it. My health will continue to deteriorate. My business will remain dead, and my potential inventions will never see the light of the day.

B. **Improving Regulation and Regulatory Review. EO 13563:** Kindly read pages 23, 24 & 25 and all other pages where EO 13563 has been mentioned**.** The Fam code Sec 4055 formula CS = K [HN - (H%) (TN] to calculate child support is obsolete, the new modified LIA is also not innovative and based on any science. The formula was a burden to the people and not easy to understand. The law will trigger unusual enforcement and kill small businesses and job opportunities like it has done to me. I cannot apply for any international job which requires a passport to travel. Like for example international sales, marketing, business development, or exports/import business.

**Second Claim**

(*Name the law or right violated*: __The Final Rule

(*Name the defendants who violated it*: California Legislature, JCC and DCSS)

CIRCULATING ORDER MEMORANDUM TO THE JUDICIAL COUNCIL

(https://www.courts.ca.gov/documents/lr-2022-additional-legislative-changes-in-compliance-with-federal-rule-fam-4077.pdf)

"This document talks about LIA as Revise and update the LIA income threshold by tying it to the full-time gross state minimum wage." It also defined the revised K-Factor of the lowest band to $0-$2900 ($15/hr.). However, the legislative bill SB 352 at the same time states that "(2) Nearly all households with at least one full-time minimum wage($15/hr.) **earner fall below the poverty** line and that number of low-wagers earners is growing." Senator Hon Skinner & Sen Hon Umberg (Chair Judiciary) including several other committees agreed on this (source: California legislative website which deals with bills).

When the legislature understands that full time minimum wage earners are still below the poverty line of California, then how does revised LIA and K-factor solve the problem of current LIA. That too when LIA of California does not have the provision of zero child support amount like other states have. **The Goal of The Final Rule**:" __ The goal of these revisions is to increase reliable child support for children by setting child support orders based on the noncustodial parent's earnings, income, or other evidence of ability to pay. **Orders set beyond a parent's ability to pay** can lead to unintended consequences, such as **unmanageable debt**, **reduced employment**, participation in the underground economy, and increased criminal activities. It is counterproductive and not in children's best interests to have their parents engage in **a cycle of nonpayment**, illegal income generation, and incarceration. Support orders based on the noncustodial parent's ability to pay should result in less conflict between parents, fewer requests for hearings, and less time and resources spent on enforcement." This goal is defeated when child support and enforcement are enforced on an already poverty-stricken NCP who is at full time minimum wage of $15/hr.

**Unmanageable debt and reduced employment are both related to my situation** (pls see page-10). I have lost my export/ import business. I will continue to remain financially incapacitated. I will continue to be poor and will never be able to bring back my small business to earn a decent living and meet my kids with some respect. I will never get SBA or other loans from the financial sector. My credit report will remain low because of high pending child support arrears. I will never be able to improve my credit with the bureaus. My child support arrears will continue to grow in interest and remain way beyond my reach to pay. I will always be on federal

and state financial support {against the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193) policy}. My business debts, taxes and child support arrears will continue to grow, attract interest and remain unpaid. It will generate further court cases and money judgements. As a result, I may get incarcerated at some point in time. State never came up with alternatives ever in 30 yrs.

**Third Claim**

(*Name the law or right violated*: First Amendment Rights prohibits the government from denying an individual access to a job or profession.

(*Name the defendants who violated it*: State of California; Legislature, Judicial Council & DCSS)

[*Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

Generally, California state/ DCSS enforces wage garnishment when the child support arrear goes beyond $2500 and child support is not being paid regularly. The state does not ask the employer to terminate NCP's job, which is the source of livelihood, due to arrears. However, the state does not acknowledge NCPs with small businesses as a job and the only source of livelihood. Page 18 indicates a variety of businesses which need licenses. Similarly export business owners need to have a passport. _ https://beta.trade.gov/article?id=Passports California state does not differentiate between NCPs who are travelling in interstate or foreign commerce with the intent to evade a support obligation and NCPs who are genuinely travelling for business purposes as a job/major source of income. Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228. The state of California informs OCSE/USCIS to revoke passport services for all NCPs with arrears beyond $2500 irrespective of whether it's willful or not. I cannot apply for any job which needs a passport for international travel to earn my living (International Sales/Marketing/ Business Development, etc.). Thus, the first amendment rights of the individual of freedom to access to a job or profession is violated. An export business has its own expenses to run it and to keep it alive. Businesses have their own ups and down and the NCP needs to manage it with the finances they have. In the process they may fail to pay "unaffordable" child support due to

financial hardship. As per DCSS everyone who has such arrears in child support will be reported to OCSE/USCIS and their passport cannot be renewed or reissued till the arrears are paid off in full. I got my passport in exactly the same situation. In April 2019. I lost my international business. I cannot apply for a job which needs international travel or assignment. I cannot do my export business. Thus, I have been denied a job and businesses which I am good at. I have grown older. I have been incapacitated and I have been pushed to live on federal/state welfare for the last four plus years. I now do odd jobs to survive. My debts, pending taxes and child support arrears are continuously growing **and I have no control in my life and career.** California state and DCSS apparently decides what all I can do in life. I ask for financial assistance from everyone.

<b><u>Demand for Relief</u></b>

[*State what you want the Court to do.  Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something.  If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.*]

Your honor, I have a twofold request. First, deals with things which will help me re-start and recover my life and career. Second, will help others and to some extent help me as well moving forward.

**Part-A**

1. Your Honor, I am asking for compensation for the following:

a. Loss of income from mid-2019 till Dec 2025 based on California DHCD -HUD Median Income Limits for one person. I lived in Alameda County and Santa Clara County for the last five years.

| YEAR | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|
| Median Income for one person for Alameda County | $78,200.00 | | | | $103,550.00 | $113,905.00 | $125,295.50 |
| Median Income for one person for Santa Clara county | | $83,450.00 | $87,900.00 | $99,950.00 | | | |
| Grand Total | | | | =$672,700.50 | | | |

-43-

| 1) Three forth of 2019 has been considered |
| --- |
| 2) It will take at least two years to revive and therefore 2024 & 2025 median income has been considered |
| 3) Generally median income has increased by about 10% each year. Thus 2024 and 2025 have been calculated. based on increment of 10% |

    a.  Loss of business structure, setup, and customers of fifteen years: $320,000.00

    b.  Loss of health, mental and family hardship--- $160,000

    c.  Delinquent debts (business, taxes and child support) --- $770,704.00

In Dec 2021 I submitted my income and expenses (FL150 form) to LCSA and had detailed debts of $642,253.90 (business, child support & taxes). I am expecting an increase of it by 20% in the last two years.

Grand Total: <u>$1,923,404.00</u>

2. I should be allowed to renew my passport and passport card because I neither "willfully" stopped paying child support nor tried to travel for foreign trade "to evade child support payment". I never had that intent and had always been involved in their activities and education whatever visitation was given to me by the court. In all my visits I took good care of my daughter and tried to do give her education and activities which enhanced her personality (page 7). Her teacher's complaint that she is an introvert girl changed and she became extrovert. She got a certificate of Outstanding performance in her next grade. She became the director of the "Arts club". I did odd and mediocre jobs in Safeway, Tesla, Lyft, Doordash, Postmate, Grubhub, etc. to survive and make a comeback so that I may be able to catch up with my daughter's education and upbringing. I always approached the court to increase visitation. I was directed to rule and law making. I educated myself in that area and tried to participate in legislative proceedings. I honestly shared my findings with the legislature and major institutions so that better laws and rules could be made which will not just benefit everyone. She is in 12th grade and soon will go to college. If I do not get up in the next few months, then I probably will lose my credibility as a father in front of my kids. The State should treat a business like a job. Just like the state cannot take away someone's job in a company to enforce child support payment, similarly business licenses and passports should not be revoked for child support payment.

3. Since it's clear that the formula generates unaffordable child support amount, my child support and arrears should be reviewed and recalculated without interest. Self-support reserve should be defined and implemented in the calculation. USDA survey report of 2015 "Expenses on Children by Families" should be used. If I am asked, I can calculate and send it to DCSS.

4. **PART-B**

1. Requested to ask the state to revise custody and visitation rules and laws. State should make child visitation mandatory. I have already provided the details of it to the legislature. Attorney Mr. Tom Clark of Assembly Judiciary committee provided the gist of it in his analysis of SB 343 (June 13, 2023; pg-7 *ARGUMENTS IN OPPOSITION, UNLESS AMENDED*). The state currently should have funds to help low-income NCPs execute visitation orders (related genuine expenses). The Federal government had been serious about visitation. **The Personal Responsibility and Work Opportunity Reconciliation Act of 1996** talks about bonding between parents & children via visitation. In several places ACF/OCSE website talks about how essential "visitation" is for children. As stated in my complaint, about 60% of the child support cases out of about one million have zero visitation.

2. President's executive order 13563 talks about providing alternatives to the public while making rules and laws. In the last thirty years there have been no laws or rules made as an alternative so that NCP can breathe and also have a normal life. The Final Rule (which follows EO.13563) also emphasizes Flexibility, Efficiency and Modernization in Child Support Enforcement Program. State has the freedom to design laws and rules in those lines. I had suggested to the legislature for Child Support Family Fund (CSFF) which has also been referenced in Attorney Mr. Tom Clark's analysis of SB 343. I can help the state design a more effective child support policy to address $18+ billion dollar pending arrears and let the children have child support funds available at all the time during their period of growth even when NCP loses a job or business.

3. State must not report all child support arrear amount to credit bureaus. Only orders which show NCPs not paying "willfully" should be reported to the credit bureaus. (essence **of**

**Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228** to be followed in context with EO 13563). SB 1055 of 2022 has already addressed the adverse effects of enforcement.

4. Revocation of passport should be for NCPs who are "willfully" not paying child support, or they are intending to travel outside of the state or for foreign trade to avoid child support payment. **Public Law 105-187 of June 24, 1998, H.R 3811/18 USC 228** to be followed in context with EO 13563. Table -A of page 18 and chart -1 of page 23 has almost similar pending arrears of NCPs. This shows that enforcement has not been effective. As a matter of fact, it has receded from bad to worse. The federal objective of PRWORA is not met.

5. Court should ask the state to abolish Fam Code 4055 formula and ask any competent body or institution (any UC/CLRC to come up with any new scientific methodology to calculate child support. The incorrect interpretation of LIA/SSR by JCC in its review report which is just the opposite of federal definition of SSR will only hurt the people of California in years to come just like it's hurting people today and had been so in the past. The objective of the federal guideline is to effectively address child visitation, support based on actual ability of the NCPs to pay child support. Your honor, I had submitted my solution based on MIT data and USDA report on "Expenditure on Children by Families" to Mr. Michael Adamski (MICHAEL.ADAMSKI@ASM.CA.GOV legislative director to Chairman of Health and Human services committee of California Assembly) upon our discussion and on his request on -07-17-2023. Federal funding of $650M and the state's equivalent budget for DCSS will get spent but the federal objectives will not be met.

6. State should review my case and take appropriate action against judges, commissioners, lawyers, minor's counsels, etc who advocate for lower or zero visitation (like judge Hon.Shelly Averyll, commissioner Mr. Paul Lozada, attorney Ms. Morna Challoner, minor counsel Ms. Kathreen Smith). CJP members vote for or against a judge's complaint. Each CJP member should be asked to provide reasons for their vote. People should know the reason. CJP decision should be allowed to be challenged in the supreme court of California. There are only 58 courts and about 6000 complaints made each year against judges. Biased behavior can be minimized if the judges are moved to different county courts of the state every four to five years. There are several advantages like, for example, knowledge sharing

among a newcomer and the judges already operating in that court. Similarly, knowing the state culture and demography and several more. I sent a bill proposal to the Judiciary committee and to several of its members' offices in the last session but was not picked up. CAL BAR should be asked to provide reasons for their decisions for or against a complaint against a lawyer. If that complaint goes to the Supreme court, then supreme court should provide reasons for their decision. Complainant should get a chance to have a public hearing. In either case the attorney's statement(defendant) should not be considered as a legal positive reason. It should be substantiated with evidence. Nearly 2% of the working population of California are lawyers (mainly because of 38 non accredited colleges of law). Highest among all states. About 18,000 complaints are lodged each year. Cal Bar does not have records of each lawyer and minor's counsel completion of annual education requirements to remain as a lawyer. The local bar council does not have that data either. Local bars do not have the data of minor's counsels and their qualifications and experience. They all reside with the judges and that leads to biased decisions about whom to pick and whom not to for a case. Parent's calls to the court to know about the minor's counsel qualification and experience are either looked at with contempt or never answered. It also gives the judge a negative opinion about the parents. Parent's enquiry can be confidential if everything is available on the website. The local bar association of Sonoma County confirmed that any enquiry with them is not confidential. Parents do not get access to their qualifications and their experience. For everything one needs to either have legal representation or file a motion. California Rule 5.242 asks for it and the judges use their discretionary power to override. Children are in the hands of an unqualified minor's counsel. These changes are long awaited and need some kind of executive orders from the governor and strict guidelines from the federal govt as well to improve California's judiciary standards.  In my case, the commissioner declined to accept Zoom Communications recording to safeguard the minor's counsel misconduct (appointed in my case by the presiding judge). Zoom Communications Inc is in contract with JCC and can provide information upon request by the court. When JCC was approached, it stated that they cannot interfere. "The Judicial Council is the policymaking body of the California courts, the largest court system in the nation. Under the leadership of the Chief Justice and in accordance with the **California Constitution, the council is responsible for ensuring** the consistent, independent, **impartial, and accessible administration of justice**. Judicial

-47-

Council staff help implement the council's policies."

https://www.courts.ca.gov/policyadmin-jc.htm

## **Demand for Jury Trial**

*[Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.]*

☐ Plaintiff demands a jury trial on all issues.

I have tried my best to explain the issued If the judge feels that the order will not be in my Favor for "Demand for Relief Part-A items1, 2 &3 and Part B item 6, then I would like to go for jury trial.

Respectfully submitted,

Date:      Jan 3rd            Sign

        2023                Name:

                            Print        RAJESH K SINHA

                            Name:

**SYDNEY K. KAMLAGER**
REPRESENTING SENATE DISTRICT 30

## FACT SHEET: SB 1055 – Driver's License Suspensions

### IN BRIEF

Senate Bill 1055 seeks to address extreme punitive measures taken against those that have fallen into child support arrears. Specifically, this bill targets driver's license suspension mandates related to missed child support payments. The current practice of notifying the California Department of Motor Vehicles after only 30 days of an overdue payment, is especially limiting to those facing financial hardships. Creating a framework for the driver's license suspension mandate protects those that may be struggling financially, while still encouraging the safety net that child support gives to children.

### BACKGROUND & PROBLEM

California currently has some of the highest punitive measures in place for child support arrears. In addition to driver's license suspension, the state also imposes a 10% interest rate on missed payments and passport denial for balances that reach $2,500. While these overtly punitive measures have the ability to harshly impact lives, they have shown no evidence of increasing child support payments. However, for a person already struggling to maintain basic necessities under financial struggle, the threat of losing a license and their means to travel can be detrimental. This barrier then has the potential to impact several other facets of a person's life, while their child support debt simply continues to accrue.

According to a report published by the Aspen Institute, child support payments made by low-income parents are more consistent when arrears have been reduced. Placing further enforcement efforts onto those struggling does not encourage consistency or continuity for the non-custodial parent. This report also highlighted the cycle of unemployment, incarceration, and debt that eventually befalls parents subjected to aggressive enforcement. In an effort to encourage payment and support of those in need, it is imperative to reconsider extreme disciplinary measures.

### SOLUTION

SB 1055 will address the issue of aggressive child support arrears mandates with a twofold approach. The state laws outlining this issue can be found in Family Code section 17520. Specifically, this bill will add a requirement that disallows the Department of Child Support Services (DCSS) from notifying the Department of Motor Vehicles (DMV) of a possible driver's license suspension due to child support arrears, if that individual makes at or below 60% of their county median income. This amount will be determined by the most up to date information from the Department of Housing and Community Development (HUD). Also, this bill will extend the current Department of Child Support Service's practice of DMV notifications after 30 days of overdue child support payments to no more than 6 months. Both of these substantive changes will allow for a more support driven approach to child support enforcement, while centering those that suffer the most from the overly punitive mandates.

Senate Bill 1055 is a modest effort in addressing economic justice among those suffering from crushing child support debt.

### FOR MORE INFORMATION

Bryn.Sullivan@sen.ca.gov or (916) 651-4030

### SUPPORT

- California Families Rise (Sponsor)
- Root and Rebound Reentry Advocates (Sponsor)
- Western Center on Law & Poverty (Sponsor)

SB 1055 (Kamlager) Fact Sheet– Last Updated March 28, 2022

**RAJESH K SINHA**

# RAJESH K. SINHA

**38725 Lexington Street, Fremont, Ca, USA-94536**
**Tel: 707-228-6943– E Fax: 1-309-408-3393 - E-mail: rajeshsinha2005@hotmail.com**

## GLOBAL MANAGEMENT TECHNOLOGY

**Strategic & Technical Sales & Marketing/ Business Development/ Program & Project Mgmt/ Domestic & International / Consulting**

### BRIEF PROFESSIONAL PROFILE

A well-rounded executive with over twenty plus years of progressively increasing techno commercial, sales & marketing management, business development & projects/program mgmt responsibilities in the IT & Telecommunications, domestic/ international government / private and consulting services sectors. Companies included AT&T, Lucent Technologies, Tata, Telcordia Technologies and Alcatel. Thorough background in IT & Telecom products and services, costing, pricing, strategic & technical sales and marketing, business development, joint ventures, budgeting, forecasting, planning, reporting, financial control, contract administration / negotiations, Program mgmt, Project implementation and bottom-line attainment. Extensive experience in alliance/ channel/ partnership/ & relationship management. Degree in Technology, Electronics and Communications.

### TECHNICAL AND BUSINESS SKILLS

- Self Starter & Proactive
- Responsible & Responsive
- Industry Startups/Large Corp
- Leadership/ Team Building
- International/ Asia, Canada, U.S.
- Cross functional relationship

- Project/Program Mgmt
- Professional Services
- Problem Resolution
- Application Development
- Strategic Alliances, CRM
- Techno-Com Consulting

- Business Development / Go-To-Market Strategy
- Tech Sales/ Mktg (Solution Sales)
- Account & Applications Mktg
- Multi-Channel Management
- Joint Ventures/ Acquisitions

### SIGNIFICANT ACHIEVEMENTS

- Actively supported sales & marketing efforts for a revenue of $1Bn of broadband DLC/DSL through tactical software and hardware applications & account marketing in US, Latin America & Canada. (ALCATEL USA)
- Successfully built operations team for AT&T & Lucent Technologies of forty plus executives in Asia Pacific.
- Successfully managed implementation of India's First 5ESS Projects (100,000 lines) and Fibre Optic project in New Delhi in record time. (Project size-$11Mn) .
- Doubly promoted to General Mgr Operations in AT&T/ Lucent Technologies due to outstanding performance in managing & implementing mega telecom & IT projects in record time.
- Successfully worked through international & domestic market, business, political and regulatory risks.
- Successfully led a team of technical experts in implementing new network equipment in NY during 9/11 terrorist attack and brought back the communication system in record time of seven days.(ALCATEL USA)
- Awards for three consecutive years as the best Project engineer and new business developments initiatives in Tatas ($60Bn conglomerate).
- Lead Manager to reinstate NYC downtown telecommunication network in record seven days after the devastation of 9/11.
- Deployment of telecom equipment in Kashmir valley for Indian army during militancy.

1

## EDUCATION / CERTIFICATIONS

- Bachelor of Technology, **Electronics and Communications**—1988- (**FIRST CLASS) Ranchi University, INDIA.**
- Professional Development Courses includes Business, Finance, Project Mgmt, human resources, sales, marketing & business development and **Global Contracts and Legal issues.**
- Institutes visited: -- **AT&T Dublin Ohio Training institute**, Lucent Technologies training institute at Chicago, **Telcordia Technologies Training Institute** in Chicago & **Tata Management & Training Centre** at Pune/India. Attended other business and product related training in International locations.
- Received several cash awards/appreciations a major team player, as well as a Team Leader in several occasions.
- Completed **Series-7 Exam of SEC/NASD** via UBS financial Services.—Yr--2005
- Hobbies --- Attending Conventions & Trade Shows, Biking, playing C hess, soccer & tennis/badminton and community service. Reading balance sheets of companies.