1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    RAJESH K. SINHA,                           Case No. 24-cv-00046-HSG

8                   Plaintiff,                  **ORDER GRANTING MOTION TO
                                                DISMISS**
9           v.
                                                Re: Dkt. No. 67
10   STATE OF CALIFORNIA, et al.,

11                  Defendants.

12

13          Pending before the Court is Defendant State of California's motion to dismiss.  Dkt. No.

14   67.  The Court finds this matter appropriate for disposition without oral argument and the matter is

15   deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **GRANTS** the

16   motion to dismiss.

17   **I.     BACKGROUND**

18          This is California's second motion to dismiss.  Although pro se Plaintiff Rajesh K. Sinha

19   has since filed a third amended complaint, Dkt. No. 64 ("TAC"), the underlying facts are largely

20   the same as before.

21          **A.     Factual Background**

22          As with Plaintiff's other filings, the TAC is dense and at times difficult to follow.  But

23   from what the Court can discern, Plaintiff continues to challenge the manner in which his child

24   support payments were calculated as a non-custodial parent.  *See generally* TAC.  Specifically,

25   Plaintiff contends that the formula used to calculate his payments is outdated and did not properly

26   account for his basic living expenses.  *See, e.g.*, *id.* at 10–14, 20–25, 53.  He also suggests that in

27   California, custody decisions—and the resulting child support payments—unfairly discriminate

28   against men because a large percentage of non-custodial parents are fathers.  *See id.* at 26–27.

United States District Court
Northern District of California

1    Plaintiff was unable to keep up with his child support payments, and although he no

2    longer owes any ongoing child support, he cannot pay the child support arrears. *See id.* at 10–12.

3    Plaintiff currently owes approximately $70,000. *Id.* at 8, 37. Because he is behind on his child

4    support in excess of $2,500, Plaintiff has been unable to renew his passport with the federal

5    government. *See id.* at 30. Plaintiff alleges that this has only exacerbated his inability to pay his

6    child support because he previously ran an exports business, which "came to a standstill" because

7    he could not travel internationally without a passport. *See, e.g.*, *id.* at 36. Plaintiff details the

8    personal and financial hardships he has suffered as a result of the unpaid child support, including

9    the loss of his business and housing. *See id.* at 7–9, 30, 36–38, 57–58, 60. He was also unable to

10   return to India when his father and brothers-in-law passed away. *See id.* at 30–31. In short,

11   Plaintiff explains that his child support arrears are preventing him from recovering personally and

12   financially, and from contacting his children. *Id.* at 9. Plaintiff further explains that because

13   interest on his child support arrears continues to grow, he will never be able to pay all he owes.

14   Plaintiff asks the Court to allow him to renew his passport, citizenship card, and business licenses.

15   *See id.* at 60. He also asks for damages in the amount of $4,073,404. *Id.*

16    Plaintiff brings several causes of action for: (1) violations of his First, Fifth, and

17   Fourteenth amendment rights, relating to the calculation of "inappropriate child support amounts"

18   and unfair consequences for his inability to pay, TAC at 20–31; (2) violations of his First

19   Amendment right to religious freedom and right to petition the government for redress of

20   grievances, seemingly relating to his passport revocation, *id.* at 31; (3) violations of the Due

21   Process Clause and Equal Protection Clause of the Fifth and Fourteenth Amendments, relating to

22   his passport revocation, *id.* at 31–36; (4) violations of the Fifth and Fourteenth Amendment for

23   "deprivation of life, liberty, and property," again seemingly related to his passport revocation as

24   well as his inability to meaningfully participate in the legislative process to update the State's

25   child support policies, *id.* at 36–49; and (5) violations of the Due Process Clause and Equal

26   Protection Clause of the Fifth and Fourteenth Amendments and violations of the Administrative

27   Procedure Act, relating to his lack of participation in the legislative process, *id.* at 49–57.

28    Read liberally and in the light most favorable to Plaintiff, the TAC alleges that Plaintiff

2

1    owes $70,000 in arrears arising from child support orders issued by the Sonoma County Superior

2    Court between 2016 and 2022.  These arrears have led to Plaintiff's passport revocation, the loss

3    of his business, the accumulation of debt, and other personal hardships.  Plaintiff argues that the

4    State's child support laws, on which his child support orders were based, are unlawful and

5    unconstitutional.  Plaintiff further urges that he was denied a meaningful opportunity to participate

6    in the legislative process to remedy these issues.  Plaintiff therefore urges the Court to declare the

7    State's child support laws unconstitutional and in violation of federal laws and regulations, and

8    award Plaintiff millions of dollars in monetary damages and restore his passport, citizenship card,

9    and business licenses.

10          **B.    Procedural Background**

11          Plaintiff initially filed this case in January 2024 against the State of California.  *See* Dkt.

12   No. 1.  Magistrate Judge Sallie Kim granted Plaintiff's motion for leave to proceed *in forma*

13   *pauperis* under 28 U.S.C. § 1915(a).  *See* Dkt. No. 4.  However, Judge Kim screened Plaintiff's

14   complaint under 28 U.S.C. § 1915(e)(2).  Dkt. Nos. 4, 8.  On March 8, 2024, Judge Kim issued an

15   order directing that the case be reassigned to a district judge with a report and recommendation

16   that the action be dismissed for failure to state a claim.  Dkt. No. 8.  Judge Kim reasoned that

17   Plaintiff's lawsuit was barred by sovereign immunity under the Eleventh Amendment.  *See id.*

18   Out of an abundance of caution, the Court declined to adopt the report and recommendation, and

19   directed the U.S. Marshal to serve the complaint on the State of California.  *See* Dkt. No. 19.

20   Defendant State of California then filed a motion to dismiss the complaint in its entirety.  Dkt. No.

21   27.  The Court granted the motion to dismiss, but granted Plaintiff one opportunity to amend the

22   complaint.  Dkt. No. 49.  In December 2024, Plaintiff filed the TAC.

23          In addition to providing additional allegations against the State of California, Plaintiff also

24   added several new federal and state Defendants to the TAC:  Antony Blinken in his capacity as the

25   U.S. Secretary of State; Xavier Becerra in his capacity as the U.S. Secretary of Health and Human

26   Services; Merrick Garland in his capacity as the U.S. Attorney General; California Department of

27   Child Support Services ("CDCSS"); April Thoma, David Kilgore, Shannon Richards, and Selis

28   Kokar in their capacities as employees of CDCSS; the Judicial Council of California ("JCC"); and

United States District Court
Northern District of California

1    Martin Hoshino in his capacity as Administrative Director of the JCC.[1]  *See id.* at 2.

2         Currently, the State of California is the only Defendant that has been served.  Section

3    1915(e)(2) mandates that the Court review an *in forma pauperis* complaint before directing the

4    United States Marshal to serve the complaint.  *Escobedo v. Applebees*, 787 F.3d 1226, 1234, & n.7

5    (9th Cir. 2015).  The Court must dismiss a complaint if it fails to state a claim upon which relief

6    can be granted.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "The standard for

7    determining whether a plaintiff has failed to state a claim upon which relief can be granted under

8    § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure

9    to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Lopez v. Smith*,

10   203 F.3d 1122, 1127–31 (9th Cir. 2000)).  The Court must therefore review the TAC to determine

11   whether it states a claim against any of the newly added Defendants.  Defendant State of

12   California has also filed a second motion to dismiss.  *See* Dkt. No. 67.  The Court first reviews the

13   State's motion and then considers whether Plaintiff has stated a claim against any of the newly-

14   added Defendants.

15   **II.    LEGAL STANDARD**

16       **A.    Rule 12(b)(1)**

17       Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the

18   court's lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter

19   jurisdiction can never be forfeited or waived and federal courts have a continuing independent

20   obligation to determine whether subject matter jurisdiction exists."  *See Leeson v. Transam.*

21   *Disability Income Plan*, 671 F.3d 969, 975, n.12 (9th Cir. 2012) (quotation omitted).  The party

22   invoking subject matter jurisdiction has the burden of establishing that such jurisdiction exists.

23   *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

24       **B.    Rule 12(b)(6)**

25       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

26

27   _____

    [1] The Court notes that since the TAC was filed, the U.S. Secretary of State, U.S. Secretary of
28   Health and Human Services, and U.S. Attorney General; and Administrative Director of the JCC
    have changed.

*(margin, left side)* United States District Court — Northern District of California

United States District Court
Northern District of California

1    statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

2    defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

3    granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is

4    appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

5    a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

6    Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a

7    claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

8    A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw

9    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

10   556 U.S. 662, 678 (2009).

11         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

12   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

13   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,

14   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

15   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

16   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

17         Additionally, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

18   "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than

19   formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

20   omitted). However, even a "liberal interpretation of a . . . complaint may not supply essential

21   elements of the claim that were not initially pled." *See Ivey v. Bd. of Regents of Univ. of Alaska*,

22   673 F.2d 266, 268 (9th Cir. 1982). "[P]ro se litigants are bound by the rules of procedure,"

23   *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), which require "a short and plain statement of

24   the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a).

25   **III.    DISCUSSION**

26       **A.    State of California**

27         Plaintiff substantially revised the TAC in response to the Court's prior order, and in his

28   opposition brief Plaintiff's claims seem to shift once more. At bottom, Plaintiff is searching for a

United States District Court
Northern District of California

1    legal theory that would shield him from the financial and personal hardships that he has faced as a

2    result of his child support arrears.  But the State of California once again identifies several grounds

3    warranting dismissal of Plaintiff's claims against it.  *See* Dkt. No. 67.

4                    **i.    *Rooker-Feldman* Doctrine**

5            To the extent Plaintiff is seeking to challenge the underlying custody arrangement or

6    resulting child support calculations from Sonoma County Superior Court, such claims are still

7    barred by the *Rooker-Feldman* doctrine.  As this Court has already explained, under the *Rooker-*

8    *Feldman* doctrine, a federal district court has no authority to review state court decisions.  *See*

9    *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity*

10   *Trust Co.*, 263 U.S. 413, 415–16 (1923).  The doctrine applies to "'cases brought by state-court

11   losers complaining of injuries caused by state-court judgments rendered before the district court

12   proceedings commenced and inviting district court review and rejection of those judgments.'"

13   *Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 606 (9th Cir. 2005), *as amended on denial of*

14   *reh'g* (July 21, 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

15   (2005)).

16           As relevant here, "[t]he doctrine bars a district court from exercising jurisdiction not only

17   over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an

18   appeal."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).  To determine whether a plaintiff is

19   bringing such a de facto appeal, the Court must "pay close attention to the *relief* sought by the

20   federal-court plaintiff."  *Id.* (quotation omitted) (emphasis in original).  "It is a forbidden de facto

21   appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal

22   wrong allegedly committed by the state court, and seeks relief from the judgment of that court."

23   *Id.* at 778.  As the Ninth Circuit has recently clarified, "*Rooker-Feldman* applies only when the

24   federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her

25   remedy relief from the state court judgment."  *See Miroth v. Cnty. of Trinity*, -- F.4th --, No. 23-

26   15759, 2025 WL 1338067, at *8 (9th Cir. May 8, 2025) (quotation omitted) (emphasis in

27   original).

28           Here, Plaintiff urges that he is bringing broad, constitutional challenges to the manner in

6

1    which custody decisions are made and child support is calculated and collected in California. *See,*

2    *e.g.*, Dkt. No. 69 at 5–9.  As such, Plaintiff explains that he is no longer asking this Court to

3    recalculate his prior child support payments or arrears. *See id.*  He explicitly states that he is "not

4    challenging the state court decision of child support amounts which they ordered by using that

5    [challenged] formula." *See id.* at 9; *see also id.* at 18 ("[T]he calculator is unconstitutional.").

6    Instead, he is seeking over $4 million in "tax exempt" compensation for losses incurred because of

7    these state court orders, including "[l]oss of income," "[l]oss of business structure, setup, and

8    customers of fifteen years," "loss of health and family hardship," "[e]ducation expenses, and

9    "[b]usiness expenses and compensation and reestablishment." *See* TAC at 60.

10        Although Plaintiff previously sought to set aside the state court orders, the TAC on its face

11    no longer seeks such relief. *See Miroth*, 2025 WL 1338067, at *8, *11–14 (concluding that

12    *Rooker-Feldman* did not apply where the plaintiffs dropped their requests for relief from the state

13    court judgments and instead sought monetary damages).  The Ninth Circuit has concluded that

14    "seeking relief from a state court judgment, which can implicate *Rooker-Feldman*, is not the same

15    thing as seeking relief that would ameliorate the effects of an adverse state court judgment." *Id.* at

16    *11 (cleaned up).  Accordingly, that Plaintiff seeks monetary damages for the consequences he has

17    faced as a result of the state custody and child support orders does not itself implicate *Rooker-*

18    *Feldman*.[2]  *Cf. Noel v. Hall*, 341 F.3d 1148, 1157–58 (9th Cir. 2003) (distinguishing between as-

19    applied versus facial challenge in *Feldman*, 460 U.S. at 486–87); *Canatella v. State of California*,

20    304 F.3d 843, 849, n.6 (9th Cir. 2002) (noting that *Rooker-Feldman* "would likely not bar" a

21    plaintiff's claims where complaint "d[id] not request review" of plaintiff's own suspension or

22    probation and instead sought "only prospective relief").

23        Still, the Court notes that some ambiguity remains in Plaintiff's requested relief.  Plaintiff

24    still appears, at least in part, to be arguing that the state court custody and child support orders

25

26    ───────────────

27    [2] California suggests that Plaintiff has not adequately pled a claim challenging the constitutionality of the State's child support laws or requested proper, prospective relief for such a claim. *See* Dkt. No. 71 at 3–4.  Although this may be a separate reason to grant the motion to dismiss, it does not

28    warrant the application of the *Rooker-Feldman* doctrine to the extent any of Plaintiff's claims are seeking to challenge the facial validity of California's child support formula.

United States District Court
Northern District of California

1    were wrongly decided and should be overturned.  In discussing his requested relief in his

2    opposition brief, for example, Plaintiff suggests that the Court should require California to "erase

3    all child support appears" and "reimburse[] whatever I have paid as child support . . . ."  *See* Dkt.

4    No. 69 at 27.  But "erasing" Plaintiff's child support arrears would necessarily require the Court to

5    reconsider and undo the underlying state court orders, which is barred by the *Rooker-Feldman*

6    doctrine.  The Court therefore **GRANTS** the motion to dismiss to the extent Plaintiff is still

7    requesting to "erase" or somehow reverse the underlying custody arrangement or child support

8    calculations from Sonoma County Superior Court, but otherwise **DENIES** the motion on this

9    basis.

10                    **ii.     Sovereign Immunity**

11           In its prior order granting the State's motion to dismiss, the Court concluded that Plaintiff's

12    claims were barred by sovereign immunity, and that none of the immunity exceptions applied.  *See*

13    Dkt. No. 49 at 6–7.  California raises this same argument again, *see* Dkt. No. 67 at 11–12, and the

14    Court once again agrees.  "The Eleventh Amendment of the United States Constitution prohibits

15    federal courts from hearing suits brought by private citizens against state governments, without the

16    state's consent."  *Nat. Res. Def. Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir.

17    1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 14 (1890)).  "The Eleventh Amendment's

18    jurisdictional bar covers suits naming state agencies and departments as defendants, and applies

19    whether the relief sought is legal or equitable in nature."  *Brooks v. Sulpher Springs Valley Elec.*

20    *Co-Op*, 951 F.2d 1050, 1053 (9th Cir. 1991).  There are only three exceptions to this immunity:

21    (1) "a state may waive its Eleventh Amendment defense"; (2) "Congress may abrogate the States'

22    sovereign immunity by acting pursuant to a grant of constitutional authority"; and (3) a plaintiff

23    may seek prospective injunctive relief to remedy violations of federal law, under the *Ex Parte*

24    *Young* doctrine.  *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001).

25           Plaintiff has not explained how any of these exceptions apply here.  California has not

26    consented to being sued and instead has explicitly asserted its Eleventh Amendment defense.  *See*

27    Dkt. No. 67 at 11–12.  Congress also has not abrogated California's sovereign immunity as to

28    Plaintiff's causes of action.  To do so, Congress must have "unequivocally expressed its intent to

United States District Court
Northern District of California

8

1   abrogate the states' immunity in the legislation itself." *See Douglas*, 271 F.3d at 818 (quotation

2   omitted).  Plaintiff's suggestion that there has been some kind of implicit waiver, Dkt. No. 69 at

3   29–42, is wrong and contrary to law.  Plaintiff also suggests that there are policy reasons why the

4   State should not be immune in this context and that monetary damages could "work as a

5   deterrent." *See id.* at 38.  But such policy considerations simply are not the basis for an exception

6   to the State's sovereign immunity.  The Court therefore **GRANTS** the motion to dismiss on this

7   basis.

8       **iii.**   **Standing**

9      Even assuming anything remains of Plaintiff's claims against the State,[3] California argues

10  that Plaintiff lacks standing to (1) challenge the State's child support laws and (2) request renewal

11  of his passport.  *See* Dkt. No. 67 at 7–10.

12     A plaintiff seeking relief in federal court bears the burden of establishing "the irreducible

13  constitutional minimum" of standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

14  (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  *First*, the plaintiff must have

15  "suffered an injury in fact." *Id.*  This requires "an invasion of a legally protected interest" that is

16  concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Lujan*,

17  504 U.S. at 560 (quotation omitted).  *Second*, the plaintiff's injury must be "fairly traceable to the

18  challenged conduct of the defendant." *Spokeo*, 136 S. Ct. at 1547.  *Third*, the injury must be

19  "likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61).  It

20  is this last requirement—redressability—that the State argues is not met here.  *See* Dkt. No. 67 at

21  7–10.

22     **Child Support Laws.**  Plaintiff challenges as unconstitutional the "calculator/method" that

23  the State uses to calculate the amount of child support someone owes.  *See* TAC at 20–31.

24  Plaintiff repeatedly states that the State's formula generates "exorbitant child support amounts" for

25  noncustodial parents such as himself.  *See id.* at 20.  He suggests that the amount one owes in

26  child support is high, irrespective of the noncustodial parent's income and where they live.  *Id.* at

27

28    [3] The Court notes, as discussed further in Section III.B below, that Plaintiff has attempted to sue individuals from the CDCSS and the JCC in their official capacities.

United States District Court
Northern District of California

1    20–25.  He also urges that the State's laws discriminate against men when determining custody

2    arrangements because men are disproportionately given "zero visitation."  *See id.* at 24, 26–28.

3    Plaintiff contends that he has standing because he continues to owe child support arrears and risks

4    being held in contempt for lack of payment.  *See* Dkt. No. 69 at 19–20.

5          However, as explained above, the *Rooker-Feldman* doctrine prevents Plaintiff seeking to

6    "undo" the underlying custody arrangement or resulting child support calculations from Sonoma

7    County Superior Court.  Although Plaintiff may suffer hardship due to the child support

8    arrearages, the Court cannot recalculate or "erase" them.  And Plaintiff has not identified any

9    prospective relief the Court could properly award here that would remedy his alleged injury.  Any

10   prospective remedies, such as declaring the State's child support calculator to be unconstitutional

11   or enjoining the State from using the formula moving forward, would not affect Plaintiff's past

12   obligations and he does not allege that he will be subject to any new child support orders in future.

13         **Passport Renewal.**  Plaintiff also alleges that the State violated Plaintiff's constitutional

14   rights by revoking his passport and failing to grant his request for emergency passport renewal.

15   *See* TAC at 36–49.  Part of Plaintiff's requested relief is that he be allowed to renew his passport.

16   *See id.* at 60.  As the Court previously explained, however, the State is not the entity that revoked

17   or failed to renew Plaintiff's passport, and the State has no authority to issue a passport.  *See* Dkt.

18   No. 49 at 5–6.  Plaintiff does not appear to have standing, therefore, to seek the specific relief from

19   California that he has requested in the TAC—being "allowed to renew my passport and

20   citizenship card payment . . . ."  *See* TAC at 60.

21         Plaintiff's response to the motion to dismiss on this issue is difficult to follow.  *See* Dkt.

22   No. 69 at 20–27.  There is a disconnect between his asserted claims and requested relief.  In his

23   opposition brief, Plaintiff appears to suggest that the Court could somehow order the State to stop

24   notifying the federal government that he owes child support arrearages exceeding $2,500.  *See id.*

25   at 20, 26–27.  But it is not clear what authority the Court would have to prevent the State from

26   complying with 42 U.S.C. § 654(31).  Plaintiff also suggests that the State should adopt a different

27   process for allowing individuals to challenge passport denials under § 654(31)(A), pointing to the

28   policy in the State of Washington.  *See* Dkt. No. 69 at 20–26.  Plaintiff has not requested such

United States District Court
Northern District of California

1   relief in the TAC, but the Court cannot order the State to change its protocols simply because

2   Plaintiff think another state's protocols are better.

3              **iv.    Substantive Claims**

4         Even if Plaintiff could somehow overcome the procedural problems above, Plaintiff's

5   extensive allegations—even when liberally construed—still fail to allege a claim for relief that is

6   plausible on its face.  Plaintiff devotes substantial space in the TAC and his opposition brief to

7   discussing how difficult it has been to pay child support and how existing enforcement policies

8   disfavor those who owe child support.  Plaintiff urges reform.  But despite Plaintiff's suggestion

9   otherwise, the policy disagreements he has identified do not rise to the level of constitutional

10  violations.

11

12          •   Plaintiff contends that California's child support policies are unconstitutional

13             because his fundamental rights are impacted by the amount of child support he

14             owes and his inability to renew his passport as a result.  *See, e.g.*, TAC at 20–26,

15             30–31.  But the Ninth Circuit has rejected similar constitutional challenges and

16             explained the importance of prioritizing the financial support of children.  *See*

17             *Eunique v. Powell*, 302 F.3d 971, 973–75 (9th Cir. 2002).

18

19          •   Plaintiff suggests that he was treated differently in the child support proceedings

20             based on his gender, in violation of the Equal Protection Clause.  *See* TAC at 26–

21             29, 31.  But the TAC does not offer any support for the suggestion that the State

22             acted with the intent or purpose to discriminate against Plaintiff based on his

23             gender, as is required to support such a claim.  *See Barren*, 152 F.3d at 1194.

24

25          •   Plaintiff suggests that the State violated his due process rights by failing to provide

26             him with a sufficient mechanism to challenge his arrearages and resulting passport

27             revocation.  *See* TAC at 30–32, 36–; Dkt. No. 69 at 21–27.  Plaintiff alludes to the

28             fact that a "State hearing never took place."  *See* TAC at 32.  However, the TAC

United States District Court
Northern District of California

United States District Court
Northern District of California

1    also indicates that CDCSS responded to Plaintiff, provided Plaintiff with forms to

2    start the hearing process and responded that there were "several factual allegations"

3    that needed to be addressed.  *See id.* at 31–32, 34, 37.  Plaintiff does not suggest

4    that he further pursued this remedy.  Rather, Plaintiff's argument appears to be that

5    the State of Washington has a better process.  *See id.* at 32–36.  But Plaintiff's

6    preference is not enough to state a viable due process claim.

7

8    • Plaintiff also argues that the State somehow precluded him from meaningfully

9    participating in the process of reforming California's child support laws.  *See* TAC

10   at 21, 43–49.  Plaintiff cites the Administrative Procedure Act ("APA").  *Id.*  The

11   APA, however, "establishes the procedures federal administrative agencies use for

12   'rule making,' defined as the process of 'formulating, amending, or repealing a

13   rule.'"  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (quoting 5 U.S.C.

14   § 551(5)).  It is thus inapposite.  In any event, even accepting Plaintiff's assertion

15   that he should be provided a means of participating in the legislative process for

16   reviewing the State's child support laws, the TAC indicates that Plaintiff has done

17   so.  The TAC even states that he "effectively communicate[d] with several

18   supporters [of pending legislation]."  *See* TAC at 49.  Plaintiff cannot state a

19   constitutional violation simply because the Legislature did not adopt his proposals.

20

21   Underlying Plaintiff's claims are myriad policy concerns about the manner in which child

22   support is calculated and enforced in California.  But such policy considerations are for Congress

23   and the State Legislature to evaluate.  Plaintiff's purported constitutional claims are not an

24   appropriate basis for the Court to essentially rewrite California's policies and procedures in this

25   area.

26                                    *        *        *

27   For all the reasons discussed above, the Court **GRANTS** the State of California's motion

28   to dismiss.

12

**B.    New Defendants**

The Court must next evaluate whether the TAC states a claim as to any of the unserved Defendants. *See Escobedo*, 787 F.3d at 1234, & n.7; *see also* 28 U.S.C. § 1915(d)(2)(B).  But Plaintiff's claims against the unserved State and Federal Defendants fail for the same reasons that his claims against the State fail.  The *Rooker-Feldman* doctrine bars Plaintiff's claims to the extent he is seeking to "erase" his child support arrearages; the State agencies have sovereign immunity; Plaintiff does not have standing for most of his claims; and any remaining claims are implausible and do not state a viable claim for relief.  The Court therefore finds that the case should be dismissed under 28 U.S.C. § 1915(d)(2)(B).

**IV.    CONCLUSION**

Plaintiff has had ample opportunity to plead a viable case, but has failed to do so.  Given this history and the nature of the deficiencies discussed above, the Court finds that granting leave to amend would be futile.  The Court therefore **GRANTS** the motion to dismiss, Dkt. No. 67, and **DISMISSES** the case without leave to amend.  *See Ramirez v. Galaz*a, 334 F.3d 850, 860 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.") (quotations omitted); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).  The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff and to close the case.

**IT IS SO ORDERED.**

Dated:   5/9/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

13